ALBANY,
Feb. 1806.

Holmes and
Drake
v.
D'Camp.

## Hatten *against* Speyer.

THIS was a special *action on the case.* The declaration stated the defendant to be the attorney of the plaintiff; that in consideration of a certain reward he promised to put out such monies belonging to the plaintiff, as came into his hands, on bond and mortgage; but that he failed and neglected so to do, by which means the money was lost, &c. *Non-assumpsit* was pleaded, and the security, but neglected to do so, it was held that he was not liable, even though the demand was barred by the bankrupt's certificate, it being clearly provable under the commission.

In a special action on the case, against a bankrupt, who had received money prior to his bankruptcy, under a promise to put it out, on bond and mortgage, in this form of

* The counsel for the plaintiffs produced the note, cancelled, and filed it with the clerk.

ALBANY,
Feb. 1806.

Hatten
v.
Speyer.

cause was tried before Mr. Justice Livingston, at the New-York sittings, the 25th of June, 1804, when a verdiet was found for the plaintiff, subject to the opinion of the court, on the following case :

The defendant was attorney in fact for the plaintiff, who resided at *Charelston*, in South-Carolina, under a power, dated in 1791, to receive, from time to time, all monies due to the plaintiff, in the state of New-York, for which he was to receive the usual commission. He received various sums, at different times, under the power, and being in partnership with a Mr. *Jacob Mark*, the monies were entered in the books of account, kept by the partnership of *Jacob Mark, and Co.* but all correspondence relative to the plaintiff's affairs, was carried on with the defendant alone, except, at one period, when he was absent.

Numerous extracts from the correspondence between the plaintiff and defendant, were inserted in the case which it is unnecessary to detail. They tended to shew a negligence in the defendant as the agent of the plaintiff, in not having the money duly secured, pursuant to the instructions of the plaintiff, and his own engagement.

*Mark* and *Speyer* became bankrupts, and were regularly discharged under the act, in the month of October, 1800. On their examination before the commissioners, they stated the plaintiff to be " a creditor for fourteen hun-" dred dollars, which was to have been secured by a mort-" gage." By a deed of lands in trust on the 2d of December, 1799, and by another of the 31st of May, 1800, they had secured several of their creditors, to a large amount.

*Mark* deposed that he entered into partnership with the defendant in 1792, when the defendant was attorney in fact to the plaintiff; that the plaintiff was informed of the connexion, and her accounts were kept in the books of the partnership; and that accounts current between her and *Jacob Mark and Co.* were sent to her annually; that from the tenor of the plaintiff's letters, in answer to the defend-

ALBANY,
Feb. 1806.

Hatten
v.
Speyer.

ant, from June to August 1798, he and the defendant considered the plaintiff as authorising the *deferring* of the execution of the securities for the fourteen hundred dollars, until a farther sum was received, so as to include all in one mortgage, and that this was the reason of the delaying the execution of the securities; that on the 3d of August, 1799, the partnership of *Mark and Co.* was dissolved, and *Mark* engaged to take all the partnership property, pay all the debts, particularly the one due to the plaintiff, and to allow the defendant ten thousand dollars for his interest in the joint estate; that circular letters were sent to the creditors, informing them of the dissolution of the partnership, and that *Mark* had undertaken to pay all the debts; that one of these letters was sent to the plaintiff, as a creditor, and adding that security would be given for the debt, if she would give further time for the payment.

The plaintiff wrote to *Mark*, the 28th of January, 1800, and in the letter, acknowledged the receipt of the circular letter of *Mark and Co.* and that as she was informed he was to settle the partnership debts, she hoped he would exert himself to pay her, and was willing to grant him a short indulgence for that purpose.

The plaintiff claimed fourteen hundred dollars principal, with interest.

This cause was argued at the last term, by *Pendleton* and *Bunner* for the plaintiff, and *Jones* for the defendant.

Two points were insisted on by the plaintiff's counsel.

1. That a claim for damages for misconduct of an attorney, by which the plaintiff lost the money entrusted to his management, is not a debt, from which the defendant is discharged by the bankrupt act.

2. That as the interest on the contract was payable half-yearly, the damages ought to be ascertained by calculating the interest half-yearly and adding it to the principal, from November 1798, when the last interest was paid.

ALBANY
Feb. 1806.

Hatten
v.
Speyer.

LIVINGSTON, J. now delivered the opinion of the court. On the trial of this cause, I thought the demand barred by the proceedings under the bankrupt act. This opinion was expressed at the time, but the parties chose, without my intervention, to make a case which presents for decision, a question of some importance, but of no great difficulty. Whether a person, who has received money prior to his bankruptcy, under a promise to put it out, on bond and mortgage, and which he failed to do, be liable, notwithstanding his certificate, in a *special action on the case* for such neglect. This is stating the question in its most favourable aspect for the plaintiff, for it may be doubted, whether being early apprised of her monies not being placed in this way, she did not approve and ratify her agent's conduct. But I am willing to meet the question as here put, being satisfied, after considerable reflection, that the defendant is protected from any suit, that can be brought against him, on account of his dealings with the plaintiff.

A bankrupt being compelled to surrender all his property for the benefit of creditors, and having done so fairly, is entitled, and such is one object of the law, to be protected against the claims of all, who were creditors *before*

L. U. S. vol. 5,
p. 69.

the act of bankruptcy. He is, in the terms of the act, " discharged from all debts due by him at the time he became " bankrupt, and from all which were or *might have been proved* under the commission." Now, if this demand could have been proved, what right have we to repeal the statute, and hold the party liable ? It was admitted, at least it was not denied, that an action *for money had and received*, might have been brought, and that then the certificate would have been a bar. This involves in it another admission, which is, that the sum in controversy *might* have been proved under the commission, and thus brings the defendant's case within the letter of the act. But plain and imperative as its tone is, because the plaintiff has had ingenuity enough to resort to a special action, it is expected that we are to pronounce the discharge a nullity, and to render the bankrupt liable for an old debt. In this

action, it is supposed, the damages are so very uncertain, that they can only be settled by a jury, and, therefore, not susceptible of proof before commissioners ; and that a bankrupt's discharge does not depend on the intrinsic merits, or real nature of the demand, but on the form in which his adversary shall elect to sue him. What was meant by the contingency, or uncertainty of this demand, and its difficulty of liquidation, I could not understand. Its payment depended on no future, or doubtful event ; the plaintiff, at the time of the bankruptcy, could have sworn to what was due. No claim can be of more easy, or prompt liquidation, whether the one or other form of action be pursued. The sum received with interest, was all that could be recovered in any way, and if compound, instead of common interest, were allowed, only a few more figures would be necessary. Here then could occur nothing of that uncertainty, which is a hindrance to making proof under a commission, and by which is intended a difficulty, from the nature of the demand, in determining, without a trial, what damages the party is entitled to. It would have been better, and more consistent with the spirit of a system of bankrupt law, and the humanity due to debtors, to have excluded from proof such claims only, as were contingent, or as originated in *torts ;* as actions for assault and battery, tresspass on land, slander, and the like, in which the damages, instead of being governed by certain and known rules, depend almost entirely on discretion, and are so arbitrary, that the party, if left to his own oath, would be totally at a loss to fix the amount. This appears to have been the understanding of Mr. Justice *Buller,* who, in *Johnson* v. *Spiller,** observes " that it is not to be taken " for granted that a demand in *trover* cannot be proved " under a commission ; where the demand can be liquidated, it " may. It is *only personal damage,* as for an assault &c. " that cannot be proved." But extensive as the exclusion has become, it is very certain that there is yet no obstacle to proving a debt, originating in the receipt of monies to another's use. It only remains to see, whether by recurring to a particular form of action, the bankrupt may be placed at the mercy of creditors. It would be somewhat extraordinary,

Vol. I.                    G

ALBANY,
Feb. 1806.

Hatten
v.
Speyer.

* 1 Doug.
167, in *note.*

ALBANY,
Feb. 1806.

if a positive and plain injunction of a statute could be frittered away in this manner, or that the substantial right of any party should be varied, if not prostrated, by an option, left with those whose interest, and feelings naturally lead to an abuse of it. I should struggle hard, could any authoritative precedent be produced, to get rid of it, but none exists. The only rule prescribed being the practicability of proving a debt under a commission, it will be unsafe to resort to any other, especially to one which can only mislead, by concealing from view the true and essential merits of the case. It is said, however, that Lord *Mansfield* broke in upon the rule in the case of *Goodtitle* v. *North*,[*] and considered the form of action, as the only test of a bankrupt's liability. Nothing more was decided in that case, than that bankruptcy was no plea to an action of *trespass* for *mesne profits*, on account of the damages being so uncertain. It is true, Lord Mansfield, in giving his opinion, does say, " the form of action is decisive," which principle is also recognized and adopted in *Parker* v. *Norton*,[*] where trover was brought for a bill of exchange, and a bankruptcy, which happened after the conversion was held to be no defence, though it was conceded that it would have been so, if the action had been for money had and received. Of these cases, it is sufficient to say, that neither of them has any binding force here, and that the reasons on which they proceed are not such as to induce us to adopt them. It is refining away one of the most important provisions of the bankrupt law—it savors of extreme hardship towards unfortunate debtors, and establishes a mode of reviving suits for old demands, which, with a little ingenuity and fiction, may be extended to almost every debt a merchant may owe, at the time of his bankruptcy. Judgment must be entered for defendant.

