COPPER, et al. *against* POWELL *and* WILLIS.

Where a bill of exchange is remitted for the payment of a precedent debt,
if due diligence is not used in obtaining payment, and due notice of dis-
honor given, it will be a satisfaction of such debt.

THIS was an action of assumpsit. The declaration con-
tained the common money counts.

Plea, non-assumpsit.

The defendants admitted the plaintiffs' claim, but con-
tended that they had fully paid it. To prove the payment,
the following facts were offered in evidence: that a certain
bill of exchange had been remitted by the defendants to
the plaintiffs, drawn by Richard S. Hallet, on Finleys, Up-
pleby & Co., of Hull, in favor of Powell, one of the defend-
ants, and by him indorsed to the plaintiffs, merchants at
Birmingham, in England. In the plaintiffs' account cur-
rent with the defendants, this bill appeared credited when
received, and debited when dishonored; that this bill was
received by the plaintiffs, duly presented, and protested for
non-acceptance, and for non-payment, the 22d June, 1804;
but no formal notice of the dishonor had ever been given
to the indorser, and it did not appear that he knew of it
before the next spring, nor had the bill been returned to
him; that a certain ship and cargo had been consigned to
the drawee by Hallet, the drawer of the bill, to meet the
same, which was wrecked on her voyage to Hull, previous
to the protest for non-acceptance, and the bills of lading
came to the hands of the drawee previous to the protest for
non-payment; that after all expenses, salvage, &c., on the

wreck, had been paid by the drawee, there remained in the hands of the drawee a, balance of about 46l. in favor of Hallet, the drawer, but this balance was not ascertained until after the bill had been protested for non-payment.

*Emmet*, for the defendants, contended that the plaintiffs, by neglecting to give notice of the dishonor of the bill to the indorser, and to return the same to him, had made it their own, and that it must now be considered as payment; that the rule, that the want of funds in the hands of the drawee excuses the neglect to give notice of the dishonor of a bill, was not without exceptions; that this bill was drawn on the faith of a consignment not yet come to hand, and in this case, on the authority of Ch. J. Eyre, in *Walwyn* v. *St. Quintin*, (1 Bos. & Pull. 652,) even the drawer is entitled to notice. The indorser, however, is entitled to notice in all cases. That the drawer has no funds in the hands of the drawee, is no excuse for not giving notice to an indorser. Peake's Ni. Pri. 202; 1 D. & E. 712. And in this case, there were funds in the hands of the drawee, the extent of which were known at the time of the protest for non-payment.

*Hopkins*, for the plaintiffs, considered the bill of exchange as a collateral security merely, being given as a means of making payment of a precedent debt. It was indorsed by one of the defendants only. That the neglect to notify the indorser in this case, would not fix the bill on the plaintiffs as a payment; that our law and the English law, in this particular, were essentially variant. The English law, resting on the statute 5 Anne, ch. 9, sec. 17, which expressly enacts, that a bill shall be considered as payment, where the party receiving it has not used due diligence to obtain

Copper v. Powell.

payment of it. But as this statute has not been adopted by our legislature, the case must rest upon the common law; that at the common law, previous to the statute of Anne, a bill of exchange, without payment, was not a satisfaction of a *precedent* debt, unless it was part of the contract that it should be so, and, therefore, a creditor, by retaining a bill under the circumstances of the present case, and neglecting to give notice of the dishonor, did not, thereby, make that bill a payment; that no diligence to obtain payment is necessary, on the part of the holder, at the common law, nor is it necessary that the creditor should give notice to the debtor of the failure in payment. It was equally the duty of the party who gave the bill, with the one who received it, to see to the payment of it; (*Clark* v. *Mundal,* 1 Salk. 124; 3 Salk. 63; Kydd on Bills, 171, 172;) that, therefore, nothing but actual payment could make the bill of exchange satisfaction of the plaintiffs' debt.

THOMPSON, J. The doctrine, urged by the plaintiffs' counsel, is liable to a variety of objections. I am of opinion that, in cases like the one now before the court, due diligence, in obtaining payment, must be shown on the part of the plaintiffs.(1) Notice of the dishonor, therefore,

---

(1) The distinction, mentioned in the argument of the plaintiffs' counsel, is noticed both by Mr. Chitty and Mr. Kydd, in their respective treatises on "Bills of Exchange." Anciently, (says Mr. Kydd,) a distinction seems to have been taken between the case of a bill of exchange, given in payment of a precedent debt, and that of one given for a debt contracted at the time the bill was given. In the latter case, the person who received it must have used due diligence to recover the money of him on whom it was drawn, otherwise he could not resort to the party from whom he received it, and charge him on the original contract. But, in the former case, the bill was not considered as payment unless the money was paid by the drawee, and no diligence seems to have been necessary in the holder, to obtain payment,

Copper v. Powell.

nor any notice to the person from whom he received it, of the failure in payment. Kydd, 178. Mr. Kydd, however, considers this ancient distinction (as he terms it) done away by Stat. 3 & 4 Anne, ch. 9, sec. 7.

Mr. Chitty agrees with Mr. Kydd, in supposing that this distinction existed at one time in the law; but does not agree with him as to the effect of the Stat. Ann., which he considers as confined to a particular class of bills, viz: bills made payable after date, and expressed to have been given for value received. He admits the change in the law, but ascribes it to a change of opinion in the courts of justice. Chitty, 131. The distinction alluded to, by these two writers and by the counsel in his argument in the text, will be found, upon a careful examination of the authorities, never to have existed in fact in the English law. They all refer to the case of *Clark* v. *Mundal*, (1 Salk. 124; 3 Salk. 68,) in support of their observations. But that case will be found, upon examination, to be a loosely reported Nisi Prius Case, (vide, 12 Mod. 203,) and, in all probability, a very inaccurate note of what fell from Lord Holt on that occasion, as it is totally at variance with other opinions, expressed by Lord Holt, on the same subject and about the same time. He always entertained the opinion, in opposition to the opinion of the merchants, that a promissory note was not payment of a precedent debt, and his strong expressions on this subject, in all probability, misled the reporter in *Clark* v. *Mundal*, who has not attended to the qualifications of that general position, constantly expressed by Lord Holt.

The case of *Clark* v. *Mundal*, was decided, (3 W. & M.,) A. D. 1692, and in the same year the case of *Darrach* v. *Savage*, (1 Show. 151,) was decided by C. J. Holt, in which the contrary doctrine, to that stated by Salkled, is expressly held; viz: that *laches*, with regard to such a note, would make it amount to a payment. In that case a draft was given on a third person, for a precedent debt, and there was *laches* in demanding payment; and Holt held, that when a bill was given for a precedent debt, such bill should be deemed payment, if the holder did not, within a convenient time, resort back to the drawer for his money; for his keeping the bill so long in his pocket, was evidence that he thought the drawee good at the time, and agreed to take him as his debtor. So, again, in the case of *Ward* v. *Evans*, (2 Lord Raymond, 930, A. D. 1704,) Lord Holt again states the true rule. In this case, the servant of the plaintiff, in receiving payment of a precedent debt from the defendant, took a goldsmith's note for part, payable to bearer; the goldsmith, however, stopped payment before the holder presented the bill; and it was contended by the defendant, in an action brought on the original consideration, that the plaintiff, by his *laches*, had made the note his own. Holt, C. J., in pronouncing judgment, said: "I am of opinion, and always was, (notwithstanding the noise and cry, that it is the custom of Lombard street,) that the acceptance of such a note, is not actual payment. I agree

Copper v. Powell.

to the difference, taken by my brother Darnell, that taking a note for goods sold is payment, because it was part of the original contract, but paper is no payment where there is a precedent debt. For, when such a note is given in payment, it is always intended to be taken under the condition, to be payment if the money be paid thereon in convenient season. But if the party who takes the note, keeps it by him for several days, without demanding it, and the party, who ought to pay it, becomes insolvent, he that received it must bear the loss, because he prevented the other person from receiving the money, by detaining it in his custody." Again, in *Popley* v. *Ashley*, (6 Mod. 147; 3 Ann.,) Holt, C. J., again held the same doctrine : "If a man take a note for a precedent debt, and after it is payable, makes no demand, and he might have been paid had he been diligent enough, then if the party, on whom the note is, fails, it is at his peril who holds the note. The rule to be deduced from these three last cases, is the correct rule; and has been constantly acted upon in the English courts, not as the rule deducible from the Stat. of Ann., but as the common law rule. The Stat. of Ann. is certainly, merely a declaratory statute, and may have arisen in some measure from the collision between Lord Holt and the merchants ; and the error in the books, above cited, has, doubtless, proceeded from its being considered a remedial law ; for we find, after the passing of that statute, frequent decisions in the English books, on the broad principle of the common law, without any reference to the statute.

Thus, in *Smith* v. *Wilson*, (Andrews, 188; 11 G. 2, 1738,) a note drawn by a third person, in favor of the defendant, and indorsed by him, had been given by the defendant to the plaintiff in payment of a precedent debt. The note became due the 28th March, and the plaintiff held it without demanding payment until the 13th May following, when the maker became insolvent. The holder then brought an action, on the original consideration, against the defendant. It was held, however, by Lee, C. J., and the whole court, that when a note is taken for a precedent debt, it must be intended to be taken, by way of payment, upon this condition, that the note is paid in a reasonable time; but if the person accepting it does not endeavor to procure such payment, and the money is lost by his default, he must, and it is reasonable that he should, bear the loss. So, again, in *Chamberlyn* v. *Delarive*, (7 G. 3, 1767; 2 Willis. 353,) a draft on a third person, had been given for a precedent debt for work and labor, and the person, to whom it was given, held it for four months without demanding payment, and afterwards the maker became insolvent, and then the payee sought to recover on the original consideration; but the court held, that the plaintiff, by accepting the note, undertook to be duly diligent in trying to get the money from the drawee, and also to apprise the drawer if the drawee failed in making payment, that he had substituted himself in the place of the defendant, who had

Copper v. Powell.

been deceived into a belief that the plaintiff had got the money of the drawee. That the common law detests negligence and *laches*. And that the plaintiff, by holding this order four months, had discharged the defendant of his debt, and credited the drawee in his stead.

Later decisions are also to the same effect. Vide, 1 Esp. 446; 15 East. 17. The true rule, therefore, always has been, that if receiving the note of a third person is part of the original contract, it is an absolute payment, without reference to the question of laches or not, if there has been no fraudulent misrepresentation; but when a note is received for a precedent debt, it is not payment, unless there has been *laches* on the part of the holder, or an express agreement to receive it as payment. The decisions, in our own courts, have been conformable to this rule. In *Murray* v. *Gouverneur* and *Kemble*, in the court of errors, (2 Johns. 440,) it was declared to be a settled rule of law, that a bill shall not be a discharge of a precedent debt, unless it be so expressly agreed between the parties. And when it is not expressly agreed, the holder is bound to use due diligence to obtain payment. *Herring* v. *Sanger*, 3 Johns. Cases, 72. And in *Tobey* v. *Barber*, (5 Johns. 72,) ·the court again declared, that it was a rule well settled and repeatedly recognized in this court, that taking a note either of a debtor or a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note as payment, and then run the risk of its being paid; or unless the creditor parts with the note, or is guilty of *laches* in not presenting it for payment in due time. He is not obliged to sue upon it; he may return it when dishonored, and resort to his original demand. *Vide etiam*, 3 Johns. 389. But, before he can recover in such a case, he must produce the note, and cancel it at the trial. *Holmes* v. *Decamp*, 1 Johns. 37. And whether a note was taken absolutely as payment or not, is a question of fact for the jury. *Johnson* v. *Weed*, 9 Johns. 310. In *Whitbelck* v. *Van Ness*, (11 Johns. 410,) all the cases on this subject are reviewed.

The promissory note of a debtor, given for a precedent debt, can, in general, only operate to extend the time of payment. It may, in some cases, when accompanied by some other thing of value, amount to an accord and satisfaction. *Frisbie* v. *Larned*, 21 Wend. 450.

The operation of this rule is interesting in the case of retiring partners, and the effect of the note of a portion of the partners upon the liability of such retiring partner, not a party to such new note, has given rise to much discussion in this state and in England.

The difficulty in making such note a satisfaction of the debt, in relation to the retiring partner, is the want of consideration. The creditor, being already possessed of the promise and liability of all the partners, very clearly gains nothing by relinquishing the liability of one of them, and any pro-

ought to have been given, but this neglect may be obvia-
ted by showing that the defendants have thereby sustained
no injury.(2)

mise on his part, therefore, however solemn, to accept the note of a portion of
the partners as payment, is clearly gratuitous.

The supreme court of this state, at an early period, held that the doctrine
of *nudum pactum* had nothing to do with the question, and sustained such
note as a full discharge of the retiring partner.    *Arnold* v. *Camp*, 12 Johns.
407.   But that decision has been disapproved of, and it must now be con-
sidered, in this state, as entirely settled that such note, although accompa-
nied by an absolute promise to receive it in payment, does not relieve the re-
tiring partner, who still remains liable for the debt upon his original obliga-
tion.    *Cob* v. *Sacket*, 1 Hill, 516;   *Waydell* v. *Luer*, 5 Hill, 448.

The transfer, by the retiring partner, of all his interest in the partnership
funds to the remaining co-partners, affords no aliment to the agreement, the
entire fund being already bound to the payment of the debt.   Ib.   It may,
therefore, be considered as well settled in this state, that unless some decided
feature of accord and satisfaction is introduced, the original liability of the
retiring partner remains.   The rule still fluctuates in England, where the ten-
dency seems to be to sustain such notes.   *Thompson* v. *Percival*, 5 Barn. &
Adolph.925;   *David* v. *Ellice*, 5 Barn. & Cres. 196.   Much ingenuity is exer-
cised by some of the learned judges there, to seize on special features to sustain
such contracts;   the most striking is placing the new relation on the footing of a
loan to the new firm, by the assent to the opening of a new credit on their
books when such assent is proved.   Ib.

(2) The leading case, on this subject, is the case of *Beckerdike* v. *Bollman*,
1 T. R. 410.   There it was decided, that if, from the time the bill was drawn
down to the time it became due, the drawer never had any effects in the
hands of the drawee, notice to the drawer of the dishonor of the bill is un-
necessary;   for he must know whether he had effects in the hands of the
drawee or not;   and if he had none, he had no right to draw upon him and
to expect payment from him;   nor can he be injured by the non-payment of
the bill, or the want of notice that it has been dishonored.   In an action
against the indorser, however, this rule does not apply;   he is in all cases en-
titled to notice, for he has no concern with the account between the drawer
and acceptor.   *Wilkes* et al. v. *Jacks*, Peak's N. P. 203.   The want of notice
to the indorser, therefore, was conclusive, and the plaintiff had no right to go
into evidence upon the broad question, whether the indorser had sustained

Copper v. Powell.

The plaintiffs then went into evidence, to show that Hallett was insolvent at the time of the return of the bill, and, of course, that no injury could arise from the want of notice. The weight of evidence, however, being that Hallett might have paid the bill, the jury found a verdict for the defendants. Vide *post*, *Ireland* v. *Kip*, and the note to that case.

*Hopkins*, for the plaintiffs.

*Emmet*, for the defendants.

any injury or not. Lord Kenyon would not allow this evidence to be gone into even in the case of a drawer, where there was no pretence that he had no funds in the hands of the drawee at the time. In *Dennis* v. *Morrier*, (3 Esp. 157,) the counsel, for the plaintiff, offered to show that the drawee had sustained no prejudice whatever from the want of notice; and contended that such evidence would dispense with the necessity of a notice. But Lord Kenyon said, I cannot hold the law to be so. The only case in which notice is dispensed with, is where there are no effects of the drawer in the hands of the drawee. This would be extending the rule farther than ever has been done, and opening new sources of litigation, in investigating whether in fact the drawer did receive a prejudice from the want of notice, or not. In *Walwyn* v. *St. Quintin*, (1 Bos. & Puller, 654,) Eyre, C. J., observes, that it has been resolved, in many cases, that when the drawer has no effects in the hands of the acceptor, notice may be dispensed with. But it may be proper to caution bill holders, not to rely on it as a general rule. The case of acceptance on the faith of consignments from the drawer not come to hand, and the case of acceptances on fair mercantile agreements, may be stated as exceptions, and there may be possibly many others. And so in *Orr* v. *Maginnis*, (7 East. 361,) Lord Ellenborough decided, that the rule does not extend to cases where the drawee had effects of the drawer in his hands, at the time of the bill drawn, though the balance might vary afterwards. In every point of view, therefore, notice to the defendant, in this case, was necessary, and the solvency or insolvency of Hallett was of no importance.