STEVENSON & RICE v. THE DISTRICT TOWNSHIP OF SUMMIT.

1. **School districts : ERECTION OF SCHOOL-HOUSES : RATIFICATION OF CONTRACTS.**   The board of directors of a district township, having power to make contracts for the erection of school-houses in the sub-districts, may, by its acts in respect thereto, so ratify a contract of this character, informally entered into, as to give full force and validity to the same.

2. —— **FAILURE OF DISTRICT ELECTORS TO VOTE TAX.**   Where, under chapter 172, Laws of Ninth General Assembly, the electors of a sub-district have determined the amount necessary to be raised for the erection of a school-house, and certified the same to the next regular meeting of the district electors for action thereon, and they neglect or refuse to vote the necessary tax, it then, it would seem, becomes the duty of the board of directors to levy a tax necessary to raise the amount required to meet the determination of the electors of the sub-district.

3. —— **CONTRACTS : ORGANIZATION OF INDEPENDENT DISTRICT.**   The organization of one of the sub-districts of a district township into an independent district according to the method pointed out by the statute, does not affect the right of a party holding a claim against

the whole district as originally constituted, and he may enforce it accordingly.

4. —— MANDAMUS. Where orders on the treasurer have been issued by the board to a creditor for the amount of his claim, and there are no funds in the treasurer's hands to meet the same, it becomes the duty of the board to levy a tax to provide the necessary funds, and on its refusal to so act, it may be compelled thereto by mandamus.

*Appeal from Marion Circuit Court.*

SATURDAY, DECEMBER 16.

THIS is an action brought to recover for a balance alleged to be due and unpaid on a contract for the erection of a school-house, and for a writ of mandamus to require the levy of a tax to pay the same. The answer pleaded various matters in avoidance, to which plaintiffs demurred. The demurrer being sustained defendant appeals.

*Seevers & Cutts* for the appellant.

*Stone, Ayers & Curtis* and *Winslow & Wilson* for the appellees.

MILLER, J.— It is alleged in the petition that the plaintiffs, on the 6th day of April, 1869, entered into a written contract with John T. Baldwin as sub-director of sub-district No. one, in said district, township of Summit, for the erection of a school-house in said sub-district, according to a certain plan and specifications therein referred to, which contract was duly authorized by the board of directors of said district, first delegated for that purpose, and said contract was afterward approved by said board; that by the terms of the contract they were to receive from the defendant the sum of $1,899, with interest, etc.; that plaintiffs erected said school-house according to the terms and con-

*1. SCHOOL DISTRICTS: ratification of contract.*

ditions of their contract; that the building was approved and accepted by the defendant; that on the 20th day of September, 1869, the board of directors of said district ordered and directed that orders be issued to plaintiffs for the amount specified and due them under the contract; that in pursuance of such direction orders were issued to plaintiffs on the treasurer of defendant for the sum of $1,899; that said orders were three in number, and each for the sum of $633.33; that one of said orders was duly paid from the school-house fund of said district, and taken up by said treasurer; that the other orders were on the 25th day of September, 1869, duly presented to said treasurer for payment and were not paid for want of funds; that there is due the plaintiffs on said orders the sum of $1,500. It is further alleged that the electors of said sub-district No. one, at their regular meeting in March, 1869, voted and determined upon the erection of said school-house, and that a tax therefor in the sum of $2,000 should be levied, and that the subsequent action of the district township board in ordering and approving said contract was based on the said action and vote of the electors of said sub-district.

The second count of the petition claims $75 for providing seats for the school-house erected by them, under another contract with the sub-director.

The third count states that there are no funds in the hands of the treasurer of the district township with which to pay the amount due plaintiffs; that the board of directors neglect and refuse to levy a tax on the property of the district township to pay the same, and prays judgment and that a writ of mandamus be issued to compel a levy of a tax to pay the same.

The first count of the answer admits the making of the contract as alleged; admits that plaintiffs built the school-house in accordance with the terms, specifications and conditions of the contract; admits that the electors of sub-dis-

trict number one, in said district township, at the time alleged in the petition, "voted and determined upon the erection of a school-house in said sub-district, and upon a tax therefor in the amount of $2,000."

The second count denies all allegations in the petition except as otherwise stated in the answer.

In the third count it is alleged that sub-district number one voted at the regular meeting in March, 1869, to erect a school-house of the value of $2,000, and the sub-director certified the same to the next regular meeting of the electors of the district township, which was held on the 13th day of March, 1869; that at said meeting J. T. Baldwin offered a resolution to allow to said sub-district the sum of $1,500, which resolution was lost; that among other doings of said meeting it was voted to allow said sub-district the sum of $600; that at said meeting, among other taxes voted, it was voted to levy a tax of ten mills on the dollar for sub-district number one and "an additional tax in said sub-district of five mills on the dollar, which taxes were ordered and levied for school-house purposes, and were certified to the board of supervisors of the county; that said taxes were levied, collected and paid to the treasurer of the defendant, together with other taxes levied and collected for school-house purposes in other sub-districts; that the treasurer apportioned the amount due said sub-district number one and found the same to be $813.71, which was paid plaintiffs on their said contract and orders; that such sum was all the money produced under and by virtue of said vote of the electors of defendant for school-house purposes for the use of sub-district number one, and that the electors of defendant never voted or determined to raise any taxes for school-house purposes other than as above stated in which sub-district number one had any interest.

The fourth count denies that Baldwin was authorized to make the contract alleged; that he had no authority to

enter into said contract except the following resolution of the board:

"On motion, John T. Baldwin was appointed to build school-house in sub-district number one." This resolution, it is alleged, was passed on the 15th day of March, 1869, and on the 22d day of the same month the following resolution was passed by the board:

"That there be added to the school-house building committee D. H. Haven and George M. Hammond in sub-district number one;" that no other authority was ever conferred upon any one to make a contract with plaintiffs for the erection of said school-house.

In the fifth count it is stated that the directors never accepted said school-house or contract, and never authorized the president and secretary to issue said orders to plaintiffs; that the only action taken in that behalf was at a meeting of the directors held September 30, 1869, when it was resolved "that the secretary be authorized to issue orders on sub-district number one for $1,900;" that the orders which were issued are drawn on the treasurer of the district township and not on sub-district number one, but it is admitted that said orders were issued in compliance with said resolution and intended as such. It is also alleged in this count that the contract was never approved by the president nor reported to the board.

The sixth count avers that at a meeting of the board, held January 15, 1870, a petition was presented to them by electors in sub-district number one asking to be constituted the independent district of Otley; that an election was ordered to determine said question; that said election resulted in favor of the proposition; that at a meeting of the board of directors on the 22d of March, it was ordered that the land on which the school-house erected by plaintiffs is situated be conveyed to said independent district, then formed according to law; that defendant proposed to convey said premises upon condition that said independ-

ent school district of Otley would pay any indebtedness that had accrued in building said chool-house, which proposition was at the time accepted by said independent district.

The seventh count alleges that the electors of sub-district number one did not at their regular meeting in March, 1870, nor at any other time after 1869, vote or determine what amount of money was required for the erection of a school-house in said sub-district, or for the payment of debts contracted for the erection thereof, nor was any such action certified to any meeting of the electors by the sub-director of said sub-district.

I. The first question to be considered is, whether the plaintiff is entitled to a judgment on the cause of action sued on notwithstanding the averments of the answer. In answering this question we will not stop to discuss the question whether the contract was strictly formal and binding on the defendant in its inception, for whatever irregularities (if any) there were in entering into the contract, by the sub-director, they were waived by the subsequent action of the defendant. The answer shows very satisfactorily that the sub-director was appointed by the board of directors to *build* the school-house which the electors of his sub-district had determined upon ; that after the house was built under the contract entered into between the sub-director and plaintiffs, the defendant accepted the house, ratified the contract, and ordered the amount due plaintiffs on the contract to be paid by their treasurer, from the school-house funds belonging to this sub-district. It is true the recorded action of the board authorizing the issue of warrants to pay for the school-house is technically inaccurate, but it is clear that the board, by their action, intended to order warrants to be issued on the proper fund, for the payment of the money due plaintiffs for the erection of the school-house, under the contract with Baldwin, the sub-director, and that the

warrants were issued in pursuance of such intended action. It is also apparent from the allegations of the answer that the board had full knowledge of the contract entered into by the sub-director, and that their action in ordering the issue of warrants to plaintiffs on their treasurer, was intended to be in compliance, thus far, with its terms. The debt due the plaintiffs was again recognized by the board of directors of defendant when they proposed to and did convey this same school-house property to the independent district of Otley, in consideration that the latter should pay this debt.

That the board of directors themselves have the power to make contracts for the erection of school-houses is admitted by appellant. See § 35, ch. 173, Laws of 9th General Assembly. Having such power they might ratify the contract made by the sub-director for a like purpose. It would have been otherwise had the board possessed no such power. *Richard* v. *Warren County*, 31 Iowa, 382. And the objection that the board could only make a binding contract when in session, is answered by the fact that their ratification of the contract was done in session.

It is insisted, however, by counsel for appellant, that their answer shows there was no legal indebtedness, " for 2. —— failure of the reason that the electors of the district electors to vote. township never created such debt by any vote," etc. They base this view on the fifth subdivision of section 7, chapter 112, Laws of 9th General Assembly, as amended by section 1, chapter 143, 11th General Assembly, which is as follows: " The electors of the district, when legally assembled at such meeting, shall have the following power :   *   *   *   To vote such tax not exceeding ten mills on the dollar in any one year, on the taxable property of the district township, as the meeting shall deem sufficient, for the purchase of grounds and the construction of the necessary school-houses for the use of the respective sub-districts, and for the payment

of any debts contracted for the erection of school-houses," etc. Now it is argued that this section conferred the power on the electors of the district to determine whether the indebtedness in question should be created or not, and that as such electors refused to vote the amount asked for by the sub-district, no indebtedness could be legally created. By section 16, chapter 172, Laws of 9th General Assembly, it is provided : " The electors of a sub-district may, at their regular meeting in March, determine what amount is required for the erection of a school-house in said sub-district, * * * and the sub-director shall certify the same to the next regular meeting of the electors of the district township held thereafter." The power is then, as given in section 7, conferred upon the electors of the district to vote the necessary tax, not exceeding ten mills on the dollar, in any one year, on the property of the district township, for the erection of the school-house in such sub-district. But by section 17 it is provided that " should the electors of the district township neglect or refuse to vote said amount " (the amount determined upon by the electors of the sub-district) " at said meeting or a sum adequate for the erection of said school-house, the board of directors *shall*, at their first regular meeting thereafter, ascertain the percentum of the sum applied for on the property of the district township, and *shall* apportion the same among the several sub-districts as justice and equity may require," etc.

The effect of these several provisions is that the electors of the sub-district are authorized to determine the amount to be raised for the purpose of erecting a school-house in such sub-district. Their action is to be certified by the proper sub-director to the next regular meeting of the district electors, who are empowered to vote such tax as shall be necessary for the purpose of meeting the expense of erecting school-houses in the several sub-districts, as certified to them by the respective sub-directors; but in case of

neglect or refusal by the district electors to exercise this power, it is made the duty of the board of directors to make the necessary and proper provision to meet the determination of the electors of the sub-district. The power to determine whether the amount required by the sub-district for the erection of a school-house shall or shall not be raised does not, therefore, rest exclusively with the electors of the district. If they neglect or refuse to vote the amount required by the sub-district, it becomes the duty of the board of directors to take the steps designated in the statute to provide the amount required. But the electors of the district in this case did vote the full amount of ten mills on the dollar as a tax on the property of the district, as required by section 7, and also a tax of five mills on the dollar on the property of the sub-district, as provided by section 30, chapter 143, Laws of 1866, to be applied to the erection of the school-house in question. The amounts thus voted were the maximum rates of taxation which, under the law, could be voted for one year. It appears, therefore, that the electors of the district did all that they had any power to do, in the first instance, in the way of creating the indebtedness and providing for its payment.

II. It is next insisted that because the sub-district in which plaintiffs built the school-house was created the "independent district of Otley" before the time for levying a tax to pay the balance of the school-house debt, such independent district ought to provide for the payment thereof, and not the defendant. In support of this position counsel cite section 11, chapter 143, Laws of 1866, which provides that the organization of an independent district "shall be completed on or before the first day of August of the year in which said organization is attempted, and when such organization is thus completed, all taxes levied by the board of directors of the district township, of which the independent district formed a part in that year, shall

3. —— contract: effect of organ- ization of inde- pendent dis- trict.

be void so far as the property within the limits of the independent district is concerned, and the board of directors of such independent district shall levy all necessary taxes for school purposes as provided by law for that year," etc., etc. Whether it was the intention, by this section, to render void any taxes levied prior to the organization of the independent district, to pay debts for the erection of a school-house in such independent district, may well be doubted; but whether such was the intention or not, it is beyond question that the organization of the sub-district as the independent district of Otley cannot have the effect to prejudice the rights of the plaintiff, however it would be between the new and old districts. The plaintiff held a valid subsisting indebtedness against the whole district, which he had the right to enforce against the whole district, and the organization of one of the sub-districts as an independent district did not have the effect to release the district as it existed when the debt was created, or to transfer the debt from the old district to the independent one, formed from a part of the old; nor did the agreement of the two districts, to the effect that the independent district would pay the school-house debt in consideration that the school-house property should be conveyed to it, bind or in any manner affect the plaintiff without his consent. So far as the plaintiff is concerned, the district township is to be treated as if no part of it had been organized into an independent district. With respect to the indebtedness to him, such is the legal *status* of the district that he is entitled to the same remedy which he would have had if the independent district had not been formed.

III. It is next urged that the board of directors cannot be compelled by mandamus to levy or vote a tax to pay this debt; that their only power is, where a judgment has been obtained against the district to issue an order on their treasurer for the amount.

7. ——mandamus.

We have already seen that when the electors of the

district neglect or refuse to vote a tax to meet the sum required by a sub-district to build a school-house it is made the duty of the board of directors to do so. The board has already issued orders on the treasurer for the amount of the debt, but no provision has been made to meet and pay but one of such orders. The issuance of an order or orders on the treasurer does not amount to payment of a judgment or debt, and we held in *Dodge* v. *Independent School District of Newton*, 34 Iowa, 510, that when an order has been issued by a school district board on their treasurer to pay a judgment against the district, and there are no funds in the treasury to pay such order, the board may be compelled by mandamus to take the necessary action for the levy of a tax to provide the necessary funds. Upon the authority of that case the plaintiff herein is entitled to the writ of mandamus to compel the levy of a sufficient tax to pay the judgment he may obtain against the defendant. If the amount is more than is authorized to be levied in any one year then the writ should require a levy from year to year until the whole amount is raised.

The demurrer was properly sustained and the judgment is

Affirmed.