GUTTA PERCHA & RUBBER MANUFACTURING COMPANY, Respondent, vs. THE CITY OF ASHLAND, Appellant.

*May 26 — June 23, 1893.*

*Municipal corporations: Ashland city charter: Enforcing payment of claims after allowance: Mandamus.*

The charter of the city of Ashland (ch. 27, Laws of 1889) provides that no action shall lie against the city on any claim or demand, but the same shall be presented to the common council for allowance, and its disallowance thereof shall be final and conclusive unless appealed from within a prescribed time; that the clerk shall draw all orders upon the treasury in pursuance of an order or resolution of the council; that no execution shall issue against the city on any judgment, but the amount of the judgment shall be levied and collected as a part of the next year's taxes, and paid before May 1 following; that no debt shall be contracted or certificate of indebtedness issued unless authorized by vote of a majority of all the members of the council; that the council shall not authorize the issue of orders upon the treasurer unless money to pay the same is in his hands to the credit of the fund upon which it is drawn; that annual estimates of the amounts to be raised by taxation shall be laid before the council, which shall thereupon levy such sums as may be sufficient for the several purposes for which taxes are authorized, not exceeding the limit provided by law; and that the taxes collected shall be applied in the order named. The council allowed certain claims based upon debts which the city had power to contract, but no orders for the payment thereof were issued because of a lack of funds. *Held*, that no action on such claims can be maintained. Although they are not to be regarded as judgments against the city, their allowance was final and conclusive, and *mandamus* will lie to enforce their payment without first obtaining judgment thereon.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

*E. E. Brossard,* for the appellant.

*A. R. Mead,* for the respondent.

CASSODAY, C. J.   This action was commenced in the circuit court September 12, 1896.   The complaint alleges five separate causes of action, in each of which it is alleged, in effect, that the defendant was, at the times mentioned, indebted to the plaintiff on account for goods, wares, and merchandise sold and delivered by the plaintiff to the defendant at Chicago, at its personal instance and request, and for which the defendant promised and agreed to pay to the plaintiff the sum therein mentioned; that such claim was duly presented to, and duly audited and allowed by, the common council of the city at the time mentioned; that no order was issued by the defendant upon the city treasurer for the payment of such amount so allowed, for the reason that there were no funds in the treasury for the payment of such claim; that July 17, 1896, the plaintiff, as the owner and holder of said claim, made a demand upon the city clerk for an order for such amount, and that the same was refused for the reason that there were no funds in the city treasury with which to pay such amount and claim; that there were no funds or moneys in the treasury of the city to pay the amount so allowed July 17, 1896, or any date subsequent thereto, and that there was then due and owing to the plaintiff from the defendant thereon the sum mentioned, with interest from the time of such allowance; that the time of incurring the indebtedness mentioned in the several causes of action, and the time of the allowance of the same, respectively, were as follows, to wit: December 19, 1894, $26, allowed March 18, 1895; March 4, 1895, $38, allowed March 18, 1895; August 3, 1895, $42, allowed January 14, 1896; January 7, 1896, $12, allowed July 14, 1896; July 11, 1896, $800, allowed August 25, 1896.   Wherefore,

the plaintiff demanded judgment against the defendant for $918, being the aggregate of the several amounts stated, together with interest on each of such sums from the time of their allowance, respectively. On October 2, 1896, judgment was entered by default in favor of the plaintiff and against the defendant for $970.96. From that judgment the defendant appeals.

Error is assigned because the court did not dismiss the action for want of original jurisdiction. The contention is that the court could only get jurisdiction by appeal upon the disallowance of one or more of the claims in whole or in part, as prescribed in the charter. Laws of 1889, ch. 27, subch. V, sec. 6; subch. VII, secs. 4–6; subch. VIII, sec. 13. These sections have recently been so fully considered and so carefully construed as to require nothing further to be said in respect to their meaning and effect. *Mason v. Ashland*, 98 Wis. 540; *Telford v. Ashland, post*, p. 238. In the case at bar each of the several claims was presented, audited, and allowed in full. Since no part of any of such claim was disallowed, it is obvious that the plaintiff was not aggrieved by any disallowance; and hence had no occasion to appeal. In support of the judgment it is contended that the plaintiff cannot enforce payment against the city without such judgment as a basis of action; in other words, that the plaintiff's claim in the aggregate, so allowed, cannot be enforced by *mandamus* without first being put into judgment.

The charter provides, in effect, that the city clerk shall "draw and sign all orders upon the treasury, except as otherwise" therein provided, in pursuance of an order or resolution of the common council (sec. 3, subch. V); that "no execution shall at any time be issued on any judgment against the city, but the judgment shall be levied on the taxable property of the city, and placed in the next tax roll for collection, and on or before the 1st day of May thereafter the amount of such judgment shall be paid to the judg-

ment creditor " (sec. 15, subch. VIII); that "no debt shall be contracted against the city, or certificate of indebtedness drawn upon the city treasurer, unless the same shall have been authorized by a vote of a majority of all the members of the common council, and no money shall be appropriated for any purpose whatever, except such as is expressly authorized by this act. . . . The common council shall not authorize the issue of orders upon the city treasurer unless the money to pay the same is in the hands of the treasurer to the credit of the fund upon which the orders are drawn " (secs. 4, 5, subch. XIV); that on or before November 1st in each year statements are to be made of the amount of different sums of money to be raised for the ensuing fiscal year, and thereupon "the city clerk shall, without delay, place such estimates before the city council for their consideration, and the council shall thereupon, by resolution, levy such sums of money as may be sufficient for the several purposes for which taxes are authorized, not exceeding the limit provided by law, and in making such levy they shall take into consideration the estimated amount that will be received by the city during the fiscal year from licenses; " that thereupon it shall be the duty of the city clerk to make out a complete tax roll in the manner and form provided by law, with a warrant for the collection of such taxes appended, which is required to be returned as therein provided; and that " out of the taxes collected the treasurer shall first pay the state tax to the county treasurer, and shall then set aside all sums of money levied for school taxes, then moneys levied for the payment of judgments, then all sums raised as special taxes in the order in which they are levied, then taxes for the payment of principal and interest on the public debt, then the taxes for bridge purposes, then for fire purposes, then for streets and other public improvements, and lastly county taxes " (subch. XV, secs. 7, 8, 16). Had the common council disallowed the plaintiff's claim in whole or in part,

and had the plaintiff failed to appeal therefrom, as provided, then such disallowance would have been "final and conclusive," as against the plaintiff, "and a bar to any action in any court, founded on such claim." Sec. 5, subch. VII.

It is true that the several claims allowed in favor of the plaintiff are not to be regarded as judgments against the city, within the meaning of sec. 15, subch. VIII, *supra;* nevertheless they are "final and conclusive," the same as a judgment would be, not only in favor of the plaintiff, but against the city. This being so, the question recurs whether the payment of such claims may be enforced by *mandamus,* the same as a judgment could be. The charter provides that the city "shall have the general powers possessed by municipal corporations at common law, and also the powers hereinafter specifically granted, and the authorities thereof shall have perpetual succession, and shall be capable of contracting and being contracted with, suing and being sued, pleading and being impleaded with, in all courts of law and equity, and shall have a common seal, and may change and alter the same at pleasure." Sec. 1, subch. I. There is no pretense that the city did not have power and authority to contract the indebtedness for which such several claims were allowed. Such allowance was a complete liquidation and settlement of the amount due upon such claims, and hence was final and conclusive between the parties. The city having power to contract the indebtedness, and to adjust, settle, and allow the same, it became its imperative duty, if necessary, to levy and collect a tax sufficient to pay such indebtedness at the earliest period practicable, under the provisions of the charter. The general rule seems to be "that where there is a clear duty to levy and collect a special tax to pay a special debt or class of debts, and where the genuineness of the debt is not questioned, and no valid defense is alleged or claimed, the levy and collection may be enforced by *mandamus* without a prior judgment at law." *State ex rel. Pfister v. Mayor,*

Gutta Percha & Rubber Mfg. Co. vs. The City of Ashland.

*etc., of Manitowoc,* 52 Wis. 428, and cases there cited; 2 Dillon, Mun. Corp. § 853 (688); Merrill, Mandamus, § 130. The learned author last mentioned says: "Absolute and unconditional obligations already ascertained and audited are in themselves on their face an order and authority to the proper officer to pay them, and upon his refusal a *mandamus* will lie to compel the levy of a tax to pay them, if the public corporation meets its obligations by taxation. Therefore a *mandamus* will issue to compel a levy of a tax to pay claims which have been allowed by the county commissioners or by a township board." Numerous cases are cited in support of such propositions. A few only are here cited: *Leach v. Comm'rs of Fayetteville,* 84 N. C. 829; *Board of Sup'rs of Jefferson Co. v. Arrghi,* 51 Miss. 668; *Klein v. Board of Sup'rs of Smith Co.* 54 Miss. 254; *People ex rel. Conway v. Board of Sup'rs of Livingston Co.* 68 N. Y. 114; *Stevenson v. Dist. Tp. of Summit,* 35 Iowa, 462; *State ex rel. Robertson v. Board of Education of Perrysburg,* 27 Ohio St. 96; *Rodman v. Justices of Larue Co.* 3 Bush, 144.

There are cases the other way, notably in the supreme court of the United States; and yet some of them are clearly distinguishable. But the rules stated are in line with our decisions. The plaintiff has an adequate remedy by *mandamus* to enforce payment, and under the charter has no other remedy. *State ex rel. Buchanan v. Kellogg,* 95 Wis. 679; *Board of Police v. Grant,* 9 Sm. & M. 77. Since this is so, the necessity of first obtaining a judgment in court, as a basis of a *mandamus,* as argued by counsel, does not exist. We must give effect to the provisions of the charter.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the action.