# CASES DETERMINED

# January Term, 1906.

---

HAY, Respondent, vs. CITY OF BARABOO, Appellant.

*November 16, 1905—January 30, 1906.*

(1–12) *Municipal corporations: Injuries from defective sidewalks: Primary liability of lotowners: Statutes: Construction: Repeal by implication: Notice of injury: Presentation of claim: Statute of limitations: Adoption of general charter provisions: Amendment.* (13–17) *Appeal: Reversal of judgment: New trial, when ordered: Direction of judgment: Judgment notwithstanding verdict.*

1. A city charter provision making it the duty of the owners or occupants of premises in front of which sidewalks are located to keep such walks in repair or pay the expenses incurred by the municipality in doing so, does not impliedly make such owners or occupants liable to travelers for injuries occasioned by the walks being out of repair.

2. If, in addition to the duty mentioned in the foregoing paragraph, the charter provides that in case of an injury to person or property by reason of any defect in a sidewalk for which the city would be liable, arising from or produced by the wrong, default, or negligence of any person other than the city, the guilty person shall be primarily liable therefor, and the city shall not be liable therefor in advance of the exhaustion by the injured person of all legal remedies to enforce the private liability, such liability is not deemed to be one of the character of that created by sec. 1339, Stats. 1898, but to be one grounded on common-law principles and so existing independently of statute.

3. Charter provisions of the sort mentioned in paragraphs 1 and 2 aforesaid do not give rise to any liability either public or private to one injured by reason of a defective sidewalk. Re-

sponsibility for the results to person or property from faulty construction of sidewalks or want of repair thereof rests wholly on sec. 1339, Stats. 1898, while responsibility for the results to person or property of active wrongdoing creating a nuisance rests on the common law. Such provisions as those mentioned in paragraph 2 deal with the latter.

4. A provision such as that mentioned in paragraph 2, given effect broadly, would materially modify sec. 1339, Stats. 1898. It should be strictly construed, first, because it would operate to vary the common law as to personal liability; second, it would to some extent repeal sec. 1339, Stats. 1898.

5. Repeals and modifications of existing laws by implication are never favored. In case of a seeming conflict between two legislative enactments, all rules for judicial construction are to be applied to the end that they may be reconciled before reaching a conclusion that the one repeals or modifies the other.

6. Nothing short of language unmistakably creating a liability of the owner or occupant of premises, in front of which a sidewalk is located, for damages to person or property caused by the insufficiency of such walk, and making such liability supersede to any extent that of the city under sec. 1339, Stats. 1898, can legitimately be given that effect.

7. The last foregoing rule is satisfied by provisions in the charter of the city of Fond du Lac, treated in *Hiner v. Fond du Lac,* 71 Wis. 74, and similar cases, but not by provisions in the charter of the city of Janesville, treated in *Selleck v. Tallman,* 93 Wis. 246, and similar cases.

8. The notice required by sec. 1339, Stats. 1898, to be given the municipality in case of injury to a person by reason of want of repair of a sidewalk is a requisite to the creation of a right to compensation for injury.

9. A charter provision prohibiting the enforcement of such a right as that mentioned in paragraph 8, except by presentation of the claim to the city council, and in case of adverse action an appeal to the circuit court, regulates the remedy, and is permissible under the rule that the legislature may take away the ordinary remedy for the enforcement of a right so long as it affords another which is adequate.

10. A charter provision, in addition to the one regulating the remedy, that no action shall be maintained against the city to enforce any tortious liability, unless a notice in writing signed by the person injured, or claiming to be injured, of the wrong and circumstances thereof and amount of damages claimed, shall be presented to the council within ninety days after the

occurrence creating the damage, bears on the remedy and is a statute of limitations.

11. Provisions such as are mentioned in the eighth, ninth, and tenth paragraphs constitute a complete system as to statutory liability. One is essential to the right. The other relates to the procedure for the enforcement of the right. The third fixes the time within which the remedy is available, and at the expiration thereof, in legal effect, extinguishes the right.

12. Adoption by a city existing under a special charter of a part of the general charter, *pro tanto* amends the former and renders it to that extent subject to further amendment by legislative action alone to change the part so adopted.

13. Upon the reversal of a judgment by this court the case is required to be remanded for a new trial only when necessary, and that condition is always deemed to exist, as to a jury case, when, under any circumstances, a new trial might result otherwise than in such a judgment being awarded as would have been rendered before had that fatal error, or errors, not been committed.

14. The practice rule that it is not permissible for a defendant to have judgment in the trial court notwithstanding the verdict, and, to the extent indicated, the one that a judgment in a jury case after trial can only be legitimately granted on a verdict which will support it, are obsolete.

15. A verdict having been rendered, which upon its face is contrary to the undisputed evidence, it may be changed upon motion to correspond with the established state of the case and a judgment be rendered thereon, or judgment may be rendered upon motion of the party against whom the erroneous verdict stands notwithstanding the same. In the event of the proper motion being made in either case in the circuit court and denied and of judgment being rendered according to the erroneous verdict, and the same being reversed upon appeal to this court, the cause may be remanded with directions to grant the motion and render judgment accordingly.

16. The last foregoing rule is based on the theory that a motion having been made in the court below enabling such court to pass upon the identical question decided here and requiring a reversal, the proper solution of which question in the first instance must necessarily have terminated the litigation, the prevailing party on appeal is entitled to have the error fully corrected, which can only be done by requiring the lower court to pass upon such question as it should have done originally, and to close the case accordingly.

17. The rule stated is extended beyond situations to which it has previously been applied, so that in case of a motion for the direction of a verdict at the close of the evidence being denied and a verdict being rendered for the adverse party, and its being held upon appeal that the motion should have been granted, and for reasons necessarily precluding the losing party from securing any different result by another trial than the one that would have necessarily followed a correct decision of the motion in the first instance, this court may cause the litigation to be terminated in the court below without a new trial, to that end remanding the cause with directions to grant the motion previously denied, and to render judgment accordingly.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to recover compensation for personal injuries alleged to have been sustained by reason of an insufficient sidewalk in the defendant city.

Omitting formal matters, the circumstances relied upon for a cause of action, as alleged, were these: October 22, 1902, about 7 o'clock p. m., plaintiff while traveling along the sidewalk on the westerly side of Grove street in the defendant city, in the exercise of ordinary care, at a point specifically mentioned, fell and was greatly injured by reason of the insufficiency and want of repair of such walk. The insufficiency of the walk consisted of a hole therein produced by the removal of one of the decking boards about eight inches wide and four feet long. Without fault on her part, plaintiff stepped into such hole and was thereby thrown down and her right leg between the knee and ankle injured, her body and her right arm bruised, and she was otherwise severely injured, to her damage in the sum of $5,000. The defendant, through its officers having charge of such matters, knew of such defective condition for several months prior to the injury. October 31, 1902, plaintiff caused written notice of the injury to be personally served on the mayor and clerk of the city, stating the time and place of the injury, the

insufficiency and want of repair causing the same, and that she claimed satisfaction for her injury. January 28, 1903, plaintiff caused a written notice of her claim to be served personally on the mayor and clerk of the defendant, and to be filed with the city clerk, stating the time and place of the injury and describing the insufficiency which caused it, and the amount of damages sustained. March 26, 1903, her claim was duly rejected by the city, and two days thereafter notice of such rejection was served upon plaintiff. April 14th thereafter plaintiff duly appealed to the circuit court from such disallowance, giving notice and filing a bond as required by law in such cases. The damages claimed were for $5,000.

The defendant answered putting in issue the allegations to the effect that sec. 1339, Stats. 1898, respecting the service of written notice of the injury was complied with, and alleging as follows: No statement in writing was presented to the common council in accordance with sec. 26, subch. XII, ch. 21, Laws of 1882; secs. 6–8, subch. V, ch. 21, Laws of 1882, regulating the subject of disallowance of such claims by the defendant and appeals therefrom were not complied with, particularly in that the bond therein required was not given; the time for presenting the alleged claim under sec. 26 aforesaid expired January 20, 1903. Plaintiff having failed to comply with the requirements of defendant's charter referred to, no claim on the part of the plaintiff was ever perfected against the city for the alleged injury. Secs. 28, 29, subch. XII, of the aforesaid law imposed upon the owner or occupant of property abutting on a street the duty of keeping the sidewalk in repair. The premises in front of which the injury is alleged to have occurred were occupied by a tenant of the owner. It was his duty to keep the sidewalk in a safe condition. The remedies against him and his landlord have not been exhausted. The alleged injuries were caused by plaintiff's want of ordinary care. She knew of the con-

dition of the walk, but proceeded thereon regardless of the existence of the defects therein.

At the commencement of the trial there was a demurrer to the complaint *ore tenus,* based on the theory that whereas the city adopted secs. 925—58 to 925—60, Stats. 1898, a part of the general city charter law, the effect thereof was to substitute the adopted portion of the general charter in place of sec. 8, subch. V, of the city charter, leaving sec. 26 of subch. XII of the city charter still in force, and that such provision governed the subject of enforcing such a claim against the city; that the charter was amended by the adoption of the general charter provision, as aforesaid, in March, 1898, before the Statutes of 1898 went into effect.

At the close of plaintiff's case there was a motion made for the direction of a verdict, which was denied. At the close of all the evidence there was a motion made for a verdict in favor of the defendant, which was denied. The cause was submitted to the jury upon the evidence under instructions, resulting in a verdict in plaintiff's favor for $500. Proper motions were made and exceptions taken to preserve for review questions treated in the opinion. Judgment was rendered in plaintiff's favor upon the verdict, and defendant appealed.

*John M. Kelley,* attorney, and *F. R. Bentley,* of counsel, for the appellant.

*Daniel H. Grady,* for the respondent.

The following opinion was filed December 12, 1905:

MARSHALL, J. Appellant's charter at sec. 29, subch. XII, ch. 21, Laws of 1882, provides that "the duty of always keeping the sidewalks . . . on or adjacent to the lots and premises of any person, in safe condition and good repair, is hereby expressly enjoined and imposed upon all owners or occupants of said lots and premises," and the preceding section provides that "in case of injury or damage by reason of

insufficient, defective or dangerous condition of [a] . . . sidewalk . . . *produced or caused by the wrong, neglect of duty, default or negligence of any person or corporation,* such person or corporation shall be primarily liable for all damages for such injury, in suit for the recovery thereof by the person sustaining such damages, and the city shall not be liable therefor until all legal remedies shall have been exhausted to collect such damages from such person or corporation."

The evidence tended to show that the injury complained of was caused by the defective condition of a sidewalk in front of occupied premises, and that no effort was made by respondent prior to the commencement of this action, or at any time, to recover her damages of such occupant or the owner of such premises. The complaint, as indicated by the statement, was barren of all allegations in respect to liability of such owner or occupant.

Counsel for appellant insist that under the circumstances stated the trial court should have sustained the demurrer to evidence, and failing in that should have granted the motion for a verdict at the close of respondent's evidence in chief, and failing in that should have granted the motion for a verdict at the close of all the evidence. That is grounded on *Amos v. Fond du Lac,* 46 Wis. 695, 1 N. W. 346; *Hiner v. Fond du Lac,* 71 Wis. 74, 36 N. W. 632; *Henker v. Fond du Lac,* 71 Wis. 616, 31 N. W. 187; *Devine v. Fond du Lac,* 113 Wis. 61, 88 N. W. 913; *Gordon v. Sullivan,* 116 Wis. 543, 93 N. W. 457. On the other hand counsel for respondent argue that the provisions of the charter referred to are entirely unlike those in the charter of the city of Fond du Lac; that they are in all essential particulars like those in the charter of the city of Green Bay and in that of the city of Janesville, which have been held to permit of enforcing the city liability in a case like this without reference to any liability of the owner or occupant of the premises in front of which the injury occurred. *Toutloff v. Green Bay,* 91 Wis.

490, 65 N. W. 168; *Selleck v. Tallman,* 93 Wis. 246, 67 N. W. 36.

In the Green Bay charter the only provisions bearing on the subject here were: First, one giving the city full authority to control and repair the sidewalks. Subd. 40, sec. 3, subch. IV, ch. 169, Laws of 1882. Second, one whereby the expense of keeping sidewalks in repair was made chargeable to abutting lots, and the duty of keeping the sidewalks in a safe condition and good repair was enjoined upon the owners or occupants of lots. Sec. 5, subch. VI. Third, one making it the duty of the street superintendent to inspect the walks from time to time as needed, and properly repair all defects not requiring an outlay exceeding $5 in any one instance, and in other circumstances to make the repairs in case of the owner of the lot neglecting to make them within twenty-four hours after being notified so to do, the expense in any case being chargeable against the lot. Sec. 7, subch. VI. The court reached the conclusion that the liability of the lotowner was to the city only, and merely to repair the walk when ordered to do so' or to pay the expenses thereof. There was no expression in the charter anywhere, in terms or in effect, that he should be liable primarily or otherwise directly to a traveler injured by a want of repair of the walk.

In the Janesville charter considered in *Selleck v. Tallman, supra,* there were provisions, in effect, as it was said, the same as in the Green Bay charter. The city was given absolute control over the streets with power to improve the same for public use, but as to the making of sidewalks only at the expense of the owners of abutting lots. Sec. 1, subch. VII, ch. 221, Laws of 1882, and subd. 4, sec. 23. The duty, in case of the construction of a sidewalk, of making it reasonably safe and suitable for public travel and keeping it in such condition, was imposed on the city by sec. 1339, Stats. 1898, unaffected by any charter provision, since there was nothing therein creating such duty nor any inconsistent with the gen-

eral law.  *Kittredge v. Milwaukee,* 26 Wis. 46; *Harper v. Milwaukee,* 30 Wis. 365; *Ripon v. Bittel,* 30 Wis. 614, 617; *Hincks v. Milwaukee,* 46 Wis. 559, 567, 1 N. W. 230; *Huston v. Fort Atkinson,* 56 Wis. 350, 14 N. W. 444.  Those cases show clearly that it has not, since the inception of our system of statutory liability of municipalities for reasonably safe condition for public use of streets and sidewalks, been supposed to be necessary to search a city charter in any case to discover whether such liability was imposed thereby or not.  Charter provisions in respect to the matter have been examined only to discover whether the general law on the subject in any particular was modified or repealed.

On the subject of liability of lotowners for damages as regards sidewalks, sec. 19, subch. XII, ch. 221, aforesaid provided, if not repealed, as follows:

"Whenever any injury shall happen to persons or property in said city, by reason of any defect in any street, sidewalk, alley or public ground, or from any other cause for which the said city would be liable, and such defect or other cause of such injury shall arise from or be produced by the wrong, default or negligence of any person or corporation other than said city, such person or corporation, so guilty of such wrong, default or negligence, shall be primarily liable for all damages for such injury, and the said city shall not be liable therefor until after all legal remedies shall have been exhausted to collect such damages from such person or corporation."

By sec. 3, ch. 102, Laws of 1889, amending subd. 4, sec. 23, aforesaid, there was imposed on lotowners the duty of repairing sidewalks in front of their premises more specifically than before, this language being used: "It shall be the duty of the owner or owners of each lot or parcel of land abutting upon any street within the city to . . . keep in repair, at his or their own expense, a standard sidewalk in front of said lot or parcel of land, and if no standard sidewalk shall have been fixed for said street, or that part thereof,

where the land of such owner or owners is situated, then such a good and sufficient sidewalk as shall be approved by the street commissioner.   Whenever the owner or owners of any lot or parcel of land abutting upon any street shall fail or neglect to . . . keep such sidewalk in good and proper repair," the same may be done by the city at his expense, the manner of doing the same and enforcing the liability for such expense being particularly pointed out.   Taking all of the provisions of the charter together, it was said in *Selleck v. Tallman, supra,* that they left the city absolutely liable under the general statute for reasonable safety of its sidewalks, and made lotowners absolutely liable to the city to execute its duty to repair such walks, or reimburse it for the expenses thereof.   As reasoned in *Toutloff v. Green Bay,* it was held that the policy of the legislature had been so long and firmly entrenched in our system to make municipalities liable primarily and directly to sufferers from the failure to keep the public ways in a reasonably safe condition for public travel that nothing short of some unmistakable repeal of the statute on the subject could reasonably be deemed to have been intended for that effect.

Taking the amended provisions of the law of 1889 with sec. 19, subch. XII, of the Janesville charter, which we have quoted, by themselves, they seemed to exempt the city from any primary liability for injuries caused by defective sidewalks, but when to reach that conclusion it was necessary to hold that sec. 1339, Stats. 1898, was repealed, as regards giving injured persons any direct remedy against the city, the rule came into operation that statutes should not be deemed to have been repealed by implication, if by any reasonable construction that result is avoidable.   *Mason v. Ashland,* 98 Wis. 540, 545, 74 N. W. 357.

The fact that sec. 19, subch. XII, of the Janesville charter aforesaid existed before there was any provision thereof imposing a duty on lotowners to repair sidewalks, and that it

was not associated in the amended charter with the provisions in relation to the repair of streets and sidewalks, the latter being in subch. VII relating to streets and highways, and the former in subch. XII relating to miscellaneous provisions, rather repelled the idea that the general law on the subject of statutory municipal liability was intended to be to any extent superseded. Such idea was further repelled by the settled policy of protecting travelers from the consequences of defective public ways by the responsibility of the public corporation controlling the same, and that to give in addition the liability of abutting lotowners and compel that to be exhausted before resorting to municipal liability, instead of giving additional protection to the traveling public, impaired the protection theretofore existing. *Toutloff v. Green Bay, supra.* Such idea was further repelled by the fact that, while the duty of lotowners to repair sidewalks was of no substantial benefit to the public over that secured to them under the general statutes, it was of great benefit to the municipality, in that all the expense of making the repairs was entirely shifted from it to the lotowner. Looking at the words of sec. 19, subch. XII—which are precisely the same as sec. 28, subch. XII, of appellant's charter, making the liability as between the injured person and the owner of the lot abutting on the street where the injury occurred primary, "whenever any injury shall happen . . . by reason of any defect . . . for which the city would be liable, and such defect or other cause of such injury shall arise from or be produced by the wrong, default or negligence of any person or corporation other than said city, such person or corporation . . . shall be primarily liable,"—it seemed reasonable in deciding the *Selleck Case* to conclude that they referred not to statutory liability, but to liability for the results of active wrongdoing, such as would render the municipality liable independently of the statute,—those liabilities which rest upon a city the same as on an individual upon

common-law principles: such as are referred to in *Hincks v. Milwaukee,* 46 Wis. 559, 1 N. W. 230; *Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407, and similar cases. In that the court followed numerous decisions where the same or similar language was construed.

In the first case cited the language under consideration was this:

"Whenever any injury shall happen to persons or property in the said city of Milwaukee, by reason of any defect or incumbrance on any . . . sidewalk . . . or from any other cause for which the said city would be liable, and such defect, . . . or other cause of such injury shall arise from or be produced by the wrong, default or negligence of any person or corporation, such person or corporation so guilty of such wrong, default or negligence shall be primarily liable for all damages for such injury; and the city shall not be liable therefor until after all legal remedies shall have been exhausted to collect such damages from such person or corporation."

That language in the Milwaukee charter is probably the parent of the similar provision in appellant's and in many other charters in this state. It was incorporated into the charter of the city of Sheboygan, and thus construed in *Raymond v. Sheboygan,* 70 Wis. 318, 35 N. W. 540:

"The very obvious intent and meaning of this provision is to require the injured party first to exhaust all legal remedies to collect his damages from the wrongdoer or person causing the defect . . . before the liability of the city shall be enforced. . . . It was intended to relieve 'the city, as far as possible with justice to the injured party, from liability for injuries occasioned by obstructions unlawfully placed in its streets by persons for whose acts it was not directly responsible, and that whenever the person injured can, by use of the remedies furnished him by the law, recover his damages of the party primarily in fault, therefore primarily liable,' he must do so before resorting to his remedy against the city."

Much confusion exists in failing to differentiate between those circumstances where the liability of the city was wholly

statutory and the only one to be resorted to, and the circumstances where the city was liable by statute and upon common-law principles as well, or upon the latter only, and there was also liability upon common-law principles of a private person, giving the injured party, in the absence of any statutory regulation, an absolute choice of remedies or the right to enforce both liabilities in one action.   As to the latter such charter provisions as those we have under consideration do not create a right or give a remedy for its enforcement.   They merely regulate the same, providing that the one primarily to blame shall be primarily called to account.

The method of approach adopted when this question was first presented here for adjudication was to claim that since the city charter imposed upon lotowners the duty to repair, the principle should apply that where the law imposes a specific duty upon one person for the benefit of another an action will lie in favor of that other against that one, in case of there being damage by failure of such person in the performance of such duty.   But the premises upon which the rule was invoked were found wanting, in that the duty to repair was not imposed on the lotowner for the benefit of travelers, but in the aid of the execution by the city of its duty created by general law or its charter, or both.

Turning to the cases upon which counsel for appellant rely, we can readily see why the construction adopted as to charter provisions, such as those in question, could not apply to the charter of the city of Fond du Lac.   In the latter the legislature in unmistakable language not only imposed upon lotowners the duty to repair sidewalks in front of their premises for the benefit of travelers, but *ex industria* construed its enactment.   Reading the language of secs. 1, 2, subch. XVIII, ch. 152, Laws of 1883,—the Fond du Lac charter,—together we have this, in case of injury or damage happening to any one by reason of insufficiency of a sidewalk:

"Every owner of any lot, part of lot, or parcel of land, in said city . . . in front of, or adjoining, which there shall.

have been or shall hereafter be placed . . . any walk, or sidewalk, . . . shall at all times keep and maintain said walk or sidewalk, . . . in a safe, convenient and effective condition, for the use of any person or persons desirous to walk thereon; and any person who may have been or shall hereafter be injured by reason of the unsafe or defective condition of such walk, or sidewalk, shall have the right to maintain an action . . . against such owner . . . for all damages or injury of every nature, resulting to such person . . . by reason of the neglect of such owner. . . . It is hereby declared to be the true meaning and intent of this act, . . . that the said city of Fond du Lac, shall not, in any case, be liable to any person or persons, for damages resulting from the defective, unsafe or dangerous condition of any walk or sidewalk, . . . and the only cause of action to which the said city of Fond du Lac shall be liable, or which shall be maintained in any court against said city, in connection with, or relation to damages resulting from failure to keep the walks or sidewalks in said city, in a safe, . . . condition, shall be by reason of the failure of any person or persons to collect a judgment recovered against such owner, or owners, . . . for any such damages, resulting from such injuries, as hereinbefore stated."

Thus it will be seen that the legislature unmistakably created a private liability where one did not previously exist, and made it the sole resort of the injured party, until such time as it should be established that, without liability of the city also, he would be remediless. The charter gave him an absolutely new right and provided for its enforcement, special care being taken to indicate that the purpose of the enactment was to displace the general law on the subject of municipal liability, so far as inconsistent therewith.

The foregoing analysis would seem to demonstrate that there is no similarity whatever between appellant's charter and the charter of the city of Fond du Lac; and that the former is in all essential particulars similar to the charter of the city of Janesville, as it existed at the time of the decision in *Selleck v. Tallman, supra*. It follows that, subject to the provisions of law requisite to perfect, and the provisions for the

enforcement of it, the liability in this case was primarily and exclusively against the city.

It is a verity in the case that appellant adopted parts of the general charter law, as stated in the answer, prior to the happening of the injury. Before such adoption the charter system for the enforcement of all liabilities of the city of a contractual nature, with some slight exceptions was embodied in secs. 5–8, subch. V, ch. 21, Laws of 1882. They provided: First, for the allowance by the common council of such a claim only upon its presentation to such council properly itemized and verified by the owner or some person in his behalf. Second, in case of disallowance of the claim, for further prosecution of the matter only by appeal to the circuit court from such disallowance. Third, for the entry of the appeal, upon the papers being duly transmitted to the clerk of the circuit court, and trial of the matter as in case of an action appealed from justice court. Fourth, that action on any claim against the city, with certain exceptions not referring to such liabilities as the one involved here, other than as indicated, was prohibited; and the determination of the council was made conclusive and a perpetual bar to any proceedings to recover thereon, in the absence of an appeal being taken within the time and in the manner pointed out, save only a remedy by action commenced in the ordinary way was preserved in case of a refusal by the council to act in the matter upon the claim being properly presented therefor. The ordinary method of enforcing liabilities of a tortious character was left unaffected by the charter, but the right to the ordinary remedy was limited by sec. 26, subch. XII, of the charter in these words:

"No action in tort shall lie or be maintained against the city of *Baraboo,* unless a statement in writing, signed by the person injured or claiming to be injured, of the wrong and circumstances thereof, and amount of damages claimed, shall be presented to the common council within ninety days after the occurring or happening of the tort alleged."

The allegations of the complaint as to nonperformance of the condition mentioned were established by the evidence. Counsel for appellant insisted upon the trial, and still insists, that such nonperformance extinguished whatever right respondent had against the city, the same as the operation of any full limitation period set by law for the enforcement of any right by a judicial remedy extinguishes such right. Respondent's counsel contends that said sec. 26 was repealed by the adoption of the general charter system for the enforcement of municipal liabilities. If the former are right, a verdict of no cause of action should have been directed in appellant's favor.

It is not claimed that there was any repeal of the limitation clause of the special charter other than by implication. The adoption proceedings expressly made those parts of the general charter law relating to the enforcement of municipal liabilities as they existed in March, 1898, a part of the special charter, in lieu of the system therein for the enforcement of all claims of a contractual nature. Secs. 6–8, subch. V, before referred to. The general charter system was then embodied in sec. 58, ch. 326, Laws of 1889, as amended by sec. 27, ch. 312, Laws of 1893, and secs. 59 and 60 of said ch. 326. In its entirety it provided as the only means for enforcing any claim or demand of any kind or character against a city, presentation thereof to the common council for allowance, and in case of adverse action, or failure to pass upon the matter at all within sixty days after such presentation, an appeal to the circuit court within the time and in the manner specified. Express or constructive disallowance of the claim, and failure to invoke efficiently such appeal remedy, rendered such disallowance final and conclusive and a bar to any action in any court in respect thereto.

It is suggested that those parts of the general charter law, adopted as stated, were changed by the revision of 1898, and that sec. 58 of the general charter was subsequently changed

by ch. 127, Laws of 1899. We do not deem it necessary to discuss that matter. The parts adopted were at the time of adoption to the effect we have indicated. Notwithstanding any changes which subsequently occurred they were the same in every essential particular at the time of the occurrence complained of as when adopted. They are included in secs. 925—58 to 925—60, Stats. 1898, as amended by ch. 127, Laws of 1899. That the change in the special charter entirely superseded that part thereof contained in said secs. 6–8, subch. V, as to the enforcement of claims of a contractual character, and also the ordinary remedy for the enforcement of actions of a tortious character, there can be no reasonable doubt. *Sheel v. Appleton,* 49 Wis. 125, 5 N. W. 27; *Mason v. Ashland, supra; Watson v. Appleton,* 62 Wis. 267, 22 N. W. 475; *Koch v. Ashland,* 83 Wis. 361, 53 N. W. 674; *Telford v. Ashland,* 100 Wis. 238, 75 N. W. 1006; *Gutta Percha & R. Mfg. Co. v. Ashland,* 100 Wis. 232, 75 N. W. 1007; *Seegar v. Ashland,* 101 Wis. 515, 77 N. W. 880; *Morgan v. Rhinelander,* 105 Wis. 138, 81 N. W. 132. The language of sec. 58 of the general charter, as it stood at the time of the happening of the injury, was substantially the same as that considered in the cited cases, and required every claim or demand of every character whatsoever to be enforced, if at all, by presentation thereof to the common council for allowance. The effect of the adoption of such section as an amendment to the special charter was to make all subsequent changes in such section modifications of the special charter accordingly. The necessary effect of adopting a part of the general charter by a city existing under a special charter is to place such city *pro tanto* under the general law as the same may be from time to time changed. That precise point has not heretofore been decided, but the same seems to be too clear for reasonable controversy.

We are unable to discover in the argument of counsel for respondent, or otherwise, any efficient answer to the conten-

tion of counsel for appellant that the limitation clause of appellant's charter, as to the prosecution of actions of this sort, as it existed prior to the adoption of the general charter provisions, was not changed thereby.

As before suggested, there was no express repeal, except of secs. 6–8, subch. V, before referred to. Implied repeals are never favored. Every rule of construction is to be applied without efficiently harmonizing provisions seemingly in conflict, before holding that there is any irreconcilable inconsistency between them. *Mason v. Ashland, supra.* It does not seem that we need to go that far in this case because there is no apparent conflict to be dealt with, as we read the charter provisions. Sec. 26, subch. XII, of appellant's charter relates wholly to a subject entirely foreign to secs. 58–60 of the general charter law, as they existed at the time of the injury in question. The former is a limitation upon the use of judicial remedies for the enforcement of a right,—a statute of limitations pure and simple. The latter is a substitute for the ordinary method of invoking judicial remedies for the enforcement of rights. The ordinary remedy is taken away and a new one is given in place thereof, which is permissible. It is no more inconsistent with the limitation feature than with sec. 1339, Stats. 1898, as regards the existence of a right of the sort here involved. The three together make this complete system. The right to hold the city liable upon its statutory obligation to keep its sidewalks reasonably safe for public travel, in case of an injury to person or property by a breach of such obligation, is conditioned upon compliance with said sec. 1339, as regards within fifteen days after the happening of the event causing the injury, giving notice in writing signed by the party, his agent or attorney, to the mayor or city clerk, stating the place where the damages occurred and describing generally the insufficiency, or want of repair, which occasioned it, and that satisfaction therefor is claimed of the city. The remedy for vindicating the right, when it shall

have been established in the manner aforesaid, is governed by the general charter provisions adopted as before indicated. The condition of the right to use such remedy is in sec. 26, subch. XII, of the charter prohibiting the same, "unless a statement in writing, signed by the person injured or claiming to be injured, of the wrong and circumstances thereof, and amount of damages claimed, shall be presented to the common council within ninety days after the occurring or happening of the tort alleged." As respondent failed to comply with that condition her right to damages, though perfected by complying with sec. 1339, Stats. 1898, ceased to exist before she commenced her action, so to speak, in the only way open to her in any event, by presenting her claim to the common council for allowance under sec. 58 of the general law. There is no manner of escape from this. One law is a condition of the existence of a right, another gives a new remedy for the enforcement of the right in place of the old one, and another operates upon the remedy and may extinguish it. That said sec. 26 was intended as a limitation upon the right to a remedy is very clear. That it must be given the same force as is accorded to other limitation acts, so far as it goes, is just as clear. Any law creating a condition of the enforcement of a right to be performed within a fixed time is a statute of limitations with all that the term signifies. That is elementary. It has been applied in many cases, notably in *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301, 306, 78 N. W. 412.

It follows that the motion for a direction of a verdict in defendant's favor at the close of the evidence should have been granted. Further proceedings, under the circumstances, in the court below, other than such as may be necessary for the dismissal of the action, with costs in favor of the defendant, would be useless. As stated in *Muench v. Heinemann,* 119 Wis. 441, 96 N. W. 800, in the language of Mr. Justice WINSLOW, "the substance of the requirement" as to proceedings in the trial court for judgment for one party, when taking the

verdict at its face the judgment should and does go the other way, to entitle such party upon prevailing on appeal to a direction from this to the lower court to render judgment in his favor "is that the appellant shall move for judgment after the verdict is in, so that the trial court may have an opportunity to pass on the question." The real philosophy of that, it seems, is that when one obtains judgment in the trial court, though upon the pleadings and the evidence the right of the matter is conclusively with his adversary, such court must be so challenged in respect thereto by the latter to at least afford it ample opportunity to considerately pass upon the matter in order to enable the one aggrieved to obtain a direction for judgment upon his successfully appealing to this court. No reason is perceived why that is not as fully satisfied when a motion is made in the trial court for a verdict upon the pleadings and evidence, as where one is made thereon for a judgment regardless of the verdict. In practical effect, the point the court is called upon to decide in one case is the same as in the other. The opportunity to decide the matter considerately is the same whether the motion is made before or after verdict.

*Muench v. Heinemann, supra,* responding to the spirit of the Code, and it is believed its letter as well, distinctly repudiated the old practice that only the plaintiff can successfully invoke the trial court for judgment notwithstanding the verdict. It changed the practice theretofore somewhat intrenched here, rendering necessary a motion in such court for such changes in a verdict rendered contrary to facts conclusively established, necessary to make it harmonize with such facts, and on its face support a judgment, in order to warrant this court, upon the party aggrieved by a judgment upon the erroneous verdict prevailing upon appeal, in directing the entry of such a judgment as will end the litigation. It held that a motion after verdict was sufficient to enable the court to pass upon the matter, which satisfied all reasonable requirements, leaving the erroneous verdict, or any verdict, as with-

Hay v. Baraboo, 127 Wis. 1.

out necessary significance.    It brushed away, so to speak, all mere forms, whether of the ancient or modern practice, because the basic reasons therefor are only to be found, as was said, "in finespun distinctions, more fanciful than convincing," and anchored firmly to the substance of things rather than to mere shadows and useless forms.    It would seem that the advanced position so taken logically warrants us in holding, if it does not require us to do so, that upon a recovery here, the prevailing party having in the court below made a motion for the disposition of the cause in his favor by the direction of a verdict, thus affording such court full opportunity to pass upon the very matter presented here, the cause may be remanded for the judgment which would necessarily have resulted from the granting of such motion, when it conclusively appears that in no event could a new trial otherwise result. That would be strictly within the letter of sec. 3071, Stats. 1898, providing that upon a reversal here a cause may be remanded for a new trial "if proper and necessary," and strictly in harmony with the fact that our system is governed by the Code, and the practice not inconsistent therewith, which this court, under its inherent and statutory power, sees fit to establish.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment dismissing the action, with costs in favor of defendant.

A motion for a rehearing was denied January 30, 1906.