LEVI HUDSON, administrator, *vs.* LYNN AND BOSTON
RAILROAD COMPANY.

Essex.    November 4, 1903. — May 18, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND
LORING, & BRALEY, JJ.

*Street Railway.    Negligence,* Contributory.    *Words,* "Exercise of due diligence."

To recover from a street railway company, under St. 1886, c. 140, for the loss of
life of a person not a passenger or an employee of the company, the plaintiff
must show that his testator or intestate was actively and actually in the exercise
of due diligence at the time of the injury which caused his death.

A person in such a stupor, from intoxication or otherwise, that shaking and kicking
him does not wake him, cannot be found to have been in the exercise of the due
diligence required by St. 1886, c. 140, to enable his administrator to recover from
a street railway company for causing his death by an injury suffered while in
this condition.

TORT, to recover for the loss of life of one Pope, the plaintiff's
intestate, from being run over by a car of the defendant, and
also for an assault alleged to have been committed upon the
plaintiff's intestate in ejecting him from a car of the defendant.
Writ dated September 28, 1898.

At the first trial of this case in the Superior Court a verdict
was ordered for the defendant at the close of the plaintiff's evi-
dence.    The plaintiff alleged exceptions which were sustained
by a decision of this court reported in 178 Mass. 64.    At the
new trial in the Superior Court before *Gaskill,* J., the plaintiff's
evidence was substantially the same as at the first trial, but the
defendant introduced evidence which it did not do at the first
trial.

The judge left to the jury three questions, each of which the
jury answered in the affirmative as follows : 1. " Were the ser-
vants of the defendant grossly careless in leaving Pope in the
place where he was left when ejected ? "    *A.* " Yes." —
2. " Ought the defendant's servants reasonably according to
common experience to have anticipated that Pope would stray
upon the defendant's track ? "    *A.* " Yes." — 3. " Were the ser-
vants of the defendant or either of them grossly careless at or

just prior to the time the car came in contact with Pope?" *A.* "Yes."

The jury found for the plaintiff on the fifth count, for assault, and assessed damages in the sum of $1. The jury also found for the plaintiff on the fourth and sixth counts, for causing the death of the plaintiff's intestate, and assessed damages in the sum of $5,000.

The judge reported the case for determination by this court.

If, upon all the evidence, this court was of opinion that the judge erred in submitting the case to the jury on the fourth and sixth counts, judgment was to be entered for the defendant. If there was no error in submitting the case to the jury, or in refusing to give the instructions requested by the defendant, or in the charge to the jury, judgment was to be entered on the fourth and sixth counts on the verdict. The requests for instructions and the charge, as well as other terms of the reservation here omitted, have been made immaterial by the decision of the court.

The case was argued at the bar in November, 1903, before *Knowlton*, C. J., *Morton, Barker, Loring, & Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*F. D. Allen*, (*W. L. Van Kleeck* with him,) for the plaintiff.

*H. F. Hurlburt*, (*D. E. Hall* with him,) for the defendant.

LORING, J.    This is an action brought in 1898, under St. 1886, c. 140, to recover a penalty for wrongfully causing the death of Joseph P. Pope, the plaintiff's intestate.

The jury were warranted in finding that Pope took a car of the defendant at Scollay Square, Boston, for Lynn about eight o'clock in the evening of a day in September. He paid his first fare and then fell into a stupor. When the car reached Revere, a second fare came due. The conductor tried to rouse him to collect the fare, without success, and after collecting the other fares, in the language of one of the plaintiff's witnesses, "he came back to him and shook him and kicked him and couldn't wake him up." Thereupon the conductor and motorman put him off, "one took him by his head and the other the feet" and laid him down beside the tracks on the Lynn marshes. He was run over and killed by the same car on its return trip to Boston. Pope was a soldier in the regular army quartered at Fort War-

ren; the day of the accident was pay day and Pope had been drinking on that afternoon. This was uncontradicted. But there was evidence from persons in the car with him that he did not appear to be intoxicated, and it may perhaps be assumed (if material) that the stupor could have been found not to be the result of drink.

The declaration contained six counts. Verdicts were directed for the defendant on the first three counts. The fifth count was a count for assault and battery; a verdict for the plaintiff in the sum of $1 was returned on this count. With this the defendant is content. The fourth and sixth counts are stated to be counts under Pub. Sts. c. 112, § 212, but that act, so far as a civil remedy is given, applies to steam railroads only, and the corresponding act, St. 1886, c. 140, is doubtless intended. In the fourth count the plaintiff alleges that his " intestate was then and there a person in the exercise of due diligence and not a passenger," and in the sixth count that he was a passenger.

It is plain that the intestate ceased to be entitled to the rights of a passenger on failing to pay the second fare when due. That ends the plaintiff's right to recover on the sixth count.

It also is plain that there was no evidence of negligence in the operation of the car on its return trip when the plaintiff's intestate was run over and killed; and the plaintiff, to recover, must show the defendant's negligence in putting the intestate off as he was put off, relying on the action of the car on its return trip as an instrument of injury which was the natural and probable result of his being put off. As to the case so made on the fourth count, the defendant asked the judge to direct a verdict for it; this was refused, and the case is here on a report as to the correctness of that among other rulings.

A majority of the court are of opinion that this ruling should have been given.

At common law, the death of a human being is not the subject of an action for damages. This was established in this Commonwealth by the case of *Carey* v. *Berkshire Railroad*, 1 Cush. 475.

In that case, which was decided in the year 1848, the difference is pointed out between the way in which the common law has been changed and the wrongful death of a person has been

dealt with by Parliament in England and by the Legislature of this Commonwealth. It is first pointed out that in England, by a then recent act (St. 9 & 10 Vict. c. 93, passed in 1846 and usually called Lord Campbell's act) it was provided that if a person was killed under such circumstances that if he had been injured and not killed the defendant would have been liable, the executor or administrator of the person killed might bring an action for the benefit of the wife, husband, parent or child, in which the jury might give such damages as they should think proportioned to the injury resulting from such death, to the parties, respectively, for whose benefit the action was brought. It is then pointed out that in Massachusetts, by St. 1840, c. 80, if the life of any passenger is lost through the wrongful act of a carrier, such carrier is made liable to a fine not exceeding $5,000, nor less than $500, to be recovered by indictment, to the use of the executor or administrator, for the benefit of the widow or heirs. This court then goes on to say: " These statutes are framed on different principles, and for different ends. The English statute gives damages, as such, and proportioned to the injury, to the husband or wife, parents and children, of any person whose death is caused by the wrongful act, neglect or default of another person ; adopting, to this extent, the principle on which it has been attempted to support the present actions. Our statute is confined to the death of passengers carried by certain enumerated modes of conveyance. A limited penalty is imposed, as a punishment of carelessness in common carriers. And as this penalty is to be recovered by indictment, it is doubtless to be greater or smaller, within the prescribed maximum and minimum, according to the degree of blame which attaches to the defendants, and not according to the loss sustained by the widow and heirs of the deceased. The penalty, when thus recovered, is conferred on the widow and heirs, not as damages for their loss, but as a gratuity from the Commonwealth."

Indeed the statute as to carriers (St. 1840, c. 80), referred to in *Carey* v. *Berkshire Railroad,* was not the first act of the kind. The first act of this kind was a highway act passed a little over fifty years before the carrier act of 1840, c. 80. It provided that if the life of a traveller was lost through a defect in a public way the county, town or persons whose duty it was to keep it in re-

pair should " be liable to be amerced in one hundred pounds " for the use of the heirs, devisees or creditors " upon a conviction . . . on a presentment or indictment of the grand jury." St. 1786, c. 81, § 7, now R. L. c. 51, § 17. This act was taken from an earlier provincial statute, Prov. St. 1693–4, c. 6, § 6, 1 Prov. Laws, (State ed.) 137. The provincial statute contained the same provision except that it did not provide that the hundred pounds should be recovered by indictment.

The system of imposing a punishment for wrongfully causing death in place of giving to the family of the deceased an action for compensation has been adhered to and extended since the decision in *Carey* v. *Berkshire Railroad*, when it applied only to travellers on defective highways and to passengers of common carriers. In 1853 it was extended to cases where a steam railroad had wrongfully caused the death of " any person, not being a passenger or employee . . . such person being in the exercise of due care and diligence." St. 1853, c. 414, now R. L. c. 111, § 267. In 1864 the statute as to steam railroads was extended to street railways, St. 1864, c. 229, § 37, now R. L. c. 111, § 267, in 1871, to collisions at grade crossings where the statutory signals were not given, St. 1871, c. 352, now R. L. c. 111, § 268, and in 1883, employees of steam railroads were put on the same footing, in case they were killed by a steam railroad, as persons who were not passengers. St. 1883, c. 243, now R. L. c. 111, § 267. Employees of street railways had been put on that footing by St. 1864, c. 229, § 37, and in 1897 all persons and corporations were put on the same basis as steam railroads and street railways. St. 1897, c. 416, now R. L. c. 171, § 2. It will be plain, from what is said hereafter, that the employer's liability act, in what is now R. L. c. 106, § 73, which was taken from the English act following Lord Campbell's act, is so far modified by § 74, in spite of what is now § 72, as to be a part of this system.

In *Commonwealth* v. *Boston & Lowell Railroad*, 134 Mass. 211, it was decided that where a steam railroad wrongfully causes the death of a passenger the case is within the act and the railroad company is to be punished, although the passenger is not in the exercise of due care and could not have recovered had he been injured only and not killed. This conclusion was reached

on the ground that under the Massachusetts system the corporation is to be punished for wrongfully causing the death of a passenger or other person described in the several acts, and that in this respect it is entirely different from the English system, which generally has been followed in nearly all the States of the United States other than Maine and New Hampshire. The reason for the decision is summed up in this sentence, at page 213 : " If the person whose negligence caused the death had been indicted for manslaughter, the negligence of the deceased .would not have been a defence. *Regina* v. *Longbottom*, 3 Cox C. C. 439. *Regina* v. *Swindall*, 2 Car. & K. 230."

It also is pointed out in the opinion in *Commonwealth* v. *Boston & Lowell Railroad*, that the case of a death at a grade crossing (originally brought within the system by St. 1871, c. 352) is another instance where the liability of the railroad to be punished is not coterminous with the right which the deceased would have had to damages had he been injured only and not killed. In case of a death at a grade crossing the railroad is punished " unless it is shown that, in addition to a mere want of ordinary care, the person injured . . . was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

By St. 1881, c. 199, (that is to say, after the system had been in operation and applicable to the death of a traveller on a defective highway for nearly ninety years and had been made applicable to many other cases since 1840, when it was extended to carriers,) a civil remedy was given in addition to the remedy by indictment, in all cases except where death was caused by a street railway, namely, in case of steam railroads (§ 1), grade crossing accidents (§ 2), carriers (§ 3), and defects in highways (§ 4). And by St. 1886, c. 140, (under which the action now before us was brought,) the omission of street railways from the act of 1881 was remedied. Before St. 1886, c. 140, the only remedy in case of street railways was by indictment. *Holland* v. *Lynn & Boston Railroad*, 144 Mass. 425.

Two years after it was established in *Commonwealth* v. *Boston & Lowell Railroad* that an indictment could be maintained for

wrongfully causing the death of a passenger not in the exercise of due care, it was decided that an action of tort could be maintained under St. 1881, c. 199, (Pub. Sts. c. 112, § 212,) for the death of a passenger who was not in the exercise of due care. *Merrill* v. *Eastern Railroad,* 139 Mass. 252. This conclusion was reached on the ground that so far as the liability of the defendant corporation is concerned, " no distinction can be made between an indictment and an action of tort, under the Pub. Sts. c. 112, § 212." *Merrill* v. *Eastern Railroad,* 139 Mass. 252, 257. This case was followed in *McKimble* v. *Boston & Maine Railroad,* 139 Mass. 542, and 141 Mass. 463.

Before and since the decision in *Merrill* v. *Eastern Railroad,* it has been stated by the court that the effect of these two statutes (St. 1881, c. 199, and St. 1886, c. 140) is to give a civil remedy for the recovery of this penalty (which is imposed by way of punishment) in addition to the remedy by indictment. In *Kelley* v. *Boston & Maine Railroad,* 135 Mass. 448, 449, C. Allen, J., speaking for the court, said : " But no criminal jurisdiction existing under the earlier statute (St. 1874, c. 372, § 163) is taken away by the St. of 1881, c. 199; and the purpose of the later statute was to give a new remedy to the party by a civil action, in addition to that already existing by indictment." In *Littlejohn* v. *Fitchburg Railroad,* 148 Mass. 478, 482, Holmes, J., speaking for the court, said : " But the present action is statutory and penal in its character. The statute does not extend the liability for personal injuries to those injuries which cause death, as in *Little* v. *Dusenberry,* 17 Vroom, 614 (where also, so far as appears, the defendant may have been negligent). It creates a liability of a different nature. The action which it gives to the administrator is merely a substitute for the indictment also provided for, and it is expressly enacted that the damages shall be ' assessed with reference to the degree of culpability of the corporation, or of its servants or agents.' " In *Doyle* v. *Fitchburg Railroad,* 162 Mass. 66, 71, Morton, J., in delivering the opinion of the court, said : " Originally the remedy was by indictment. Afterwards it was extended to an action of tort. St. 1871, c. 381, § 49. St. 1874, c. 372, § 163. St. 1881, c. 199, §§ 1, 6. But only one of the remedies can be pursued by the executor or administrator. And whether the

amount is recovered by indictment or in an action of tort, it goes in either case to the widow and children and next of kin, and the executor or administrator has no interest in it.   It is in substance a penalty given to the widow and children and next of kin, instead of to the Commonwealth, and as such the intestate could not release the defendant from liability for it."   And finally, it was held in *Worcester & Suburban Street Railway* v. *Travelers Ins. Co.* 180 Mass. 263, 264, that a policy insuring the plaintiff "against loss from liability to every person who may . . . accidentally sustain bodily injuries . . . under circumstances which shall impose upon the insured a common law or statutory liability for such injuries," did not cover sums paid by the railway for wrongfully causing the death of some of its passengers.

The conclusion which has been reached as to the character of these two acts (St. 1881, c. 199, and St. 1886, c. 140) could not have been avoided.   It had to be held that these acts gave a civil remedy for the recovery of a penalty imposed by way of punishment.

Where a plaintiff's rights are invaded by the wrongful act of a defendant, the question and the only question is how great was the injury done to the plaintiff.   But where a defendant is to be punished for a wrongful act done by him, the question and the only question is how serious was the defendant's wrong doing, and the amount of injury inflicted upon the deceased (except so far as it gives character to the wrong doing of the defendant) is altogether immaterial.

At common law damages are given for the full amount of the injury done to the plaintiff where he has an action for a violation of his rights.   And where the amount recoverable in such an action is limited by statute (as it is in this Commonwealth where a person is injured but not killed from a defect in a public way, R. L. c. 51, § 18, or where an action is given by the employer's liability act, St. 1887, c. 270, § 3, now R. L. c. 106, § 74, for an injury short of death) the question for the jury is, What damages will compensate the plaintiff for the injury done him, not exceeding the limited amount which by statute can be imposed ?

Where a penalty is imposed by way of punishment in a crim-

inal prosecution, the amount of the penalty is fixed by the presiding judge in passing sentence. In case of the statutes we have been considering (imposing a penalty for wrongfully causing death) no statutory provision was necessary as to how the amount of the penalty to be imposed in a particular case was to be ascertained, and none was made, so long as the only remedy provided was by way of indictment. As was stated in *Carey* v. *Berkshire Railroad*, 1 Cush. 475, 480, " A limited penalty is imposed, as a punishment of carelessness in common carriers. And as this penalty is to be recovered by indictment, it is doubtless to be greater or smaller, within the prescribed maximum and minimum, according to the degree of blame which attaches to the defendants, and not according to the loss sustained by the widow and heirs of the deceased."

But when it was provided by statute that an action of tort could be maintained where death was caused through the wrongful act of the defendant, it thereby became the province of the jury to fix the amount of the penalty to be imposed, and it became necessary to specify how the amount of it should be assessed. It was provided that the amount to be recovered in the action of tort was " to be assessed with reference to the degree of culpability of said corporation or of its servants or agents." That fixed the character of the action of tort under these two acts. St. 1881, c. 199, and St. 1886, c. 140. By that provision the effect of these two acts was to give a civil remedy for the recovery of a penalty imposed by way of punishment.

It is not uncommon for an informer to be allowed by statute to maintain a civil action for the recovery of a penalty imposed as a punishment. An action under St. 1881, c. 199, or St. 1886, c. 140, is an action of the same kind, the only difference being that the penalty in these actions goes not to an informer but to the family of the deceased.

The character of these acts imposing a penalty for wrongfully causing death does not seem to have been present in the mind of the court when it was assumed in *McCreary* v. *Boston & Maine Railroad*, 153 Mass. 300, that the corporation was liable under the statute where an employee who is on its tracks contrary to law is killed through the wanton and reckless acts of a steam railroad corporation, because under those circumstances he could

have recovered had he been injured and not killed. The language of St. 1853, c. 414, § 2, now R. L. c. 111, § 267, is to the contrary. See *Dillon* v. *Connecticut River Railroad*, 154 Mass. 478, 479. This assumption is repeated in *McCreary* v. *Boston & Maine Railroad*, 156 Mass. 316. In these cases there was no question of the effect of wanton and reckless acts, and the assumption was not necessary to any of the three decisions.

Inasmuch as "no distinction can be made between an indictment and an action of tort," so far as the liability of the defendant is concerned, the question in the case at bar is this: If the defendant railroad had been indicted for causing the death of Joseph P. Pope, would the evidence introduced at this trial have warranted a finding that the government had proved the averment (which it must have made in the indictment) that Pope, when put off the car, was "in the exercise of due care and diligence"?

By the testimony of the plaintiff's witnesses, Pope was then in such a stupor that he could not be waked either by shaking or kicking. We are of opinion that a person in such a condition could not have been found to have been "a person . . . in the exercise of due care and diligence," had an indictment been resorted to, and therefore cannot be found to have been "in the exercise of due diligence," as he was alleged to have been in the fourth count of the declaration in this action of tort. We use the words "due diligence" in place of the words "due care" found in the Revised Laws, (R. L. c. 111, § 267,) merely because those are the words of the count now in question (the fourth count) and of St. 1886, c. 140, under which this action was brought, and not because there is any distinction between those words and the words of R. L. c. 111, § 267.

Since the Massachusetts acts are exactly what Lord Campbell's act is not, it is of no consequence that in States where Lord Campbell's act has been enacted a recovery can be had under circumstances like those now in question. We refer to *Louisville & Nashville Railroad* v. *Johnson,* 108 Ala. 62; *Guy* v. *New York, Ontario & Western Railroad,* 30 Hun, 399; *Gill* v. *Rochester & Pittsburgh Railroad,* 37 Hun, 107; *Louisville & Nashville Railroad* v. *Ellis,* 97 Ky. 330; *Weymire* v. *Wolfe,* 52 Iowa, 533; *Southern Railway* v. *Webb,* 116 Ga. 152; *Haug*

v. *Great Northern Railway*, 8 No. Dak. 23 ; *Chicago City Railway* v. *O'Donnell*, 207 Ill. 478. In each of these States there are acts like Lord Campbell's act. See Ala. Civil Code 1896, c. 2, §§ 26, 27 ; 1 Rev. Sts. N. Y. (Birdseye) 834 ; Sts. Ky. 1899, § 6 ; McClain's Iowa Ann. Code, § 3731, and notes ; Ga. Code, 1895, § 3828 ; No. Dak. Rev. Codes, 1895, §§ 5974–5976 ; Rev. Sts. Ill. 1898, c. 70, §§ 1, 2.

Neither are the cases of any assistance in which it has been held that a plaintiff could have recovered who had been injured without being killed, under circumstances like those now before us. See *Evans* v. *St. Louis, Iron Mountain & Southern Railway*, 11. Mo. App. 463 ; *Kline* v. *Central Pacific Railroad*, 37 Cal. 400 ; *Conolly* v. *Crescent City Railroad*, 41 La. Ann. 57. The Legislature deliberately did not adopt as the test whether the railroad is to be punished the liability which the defendant would have been under to make compensation had the deceased been injured only and not killed. *Commonwealth* v. *Boston & Lowell Railroad*, 134 Mass. 211. *Merrill* v. *Eastern Railroad*, 139 Mass. 252.

It is to be noted that no one of these cases goes further than to hold that in such a case the plaintiff can recover. None of them takes the further step that when he does recover in such a case, he recovers on the ground that he was in the exercise of due care, and not on the ground that he is excused from alleging and proving due care by the fact that when insensible he was exposed to the danger in question by the wrongful act of the defendant. It is also to be noted that *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, is a case of direct injury through wanton and reckless acts. *Aiken* v. *Holyoke Street Railway* is an authority that in such a case a plaintiff need not allege or prove that he was in the exercise of due care. There is no case in which it is held that where wanton and reckless acts indirectly cause damage to the plaintiff the rule of *Aiken* v. *Holyoke Street Railway* applies.

The words which we have to construe are words originally used in a statute imposing a punishment to be inflicted only on an indictment being found, and are now to receive the same construction as if contained in an indictment. In addition to that, in construing these words it is settled that the

test is not whether the deceased could have maintained an action had he been injured and not killed. The Legislature might have provided that steam railroads and street railways should be punished whenever they caused the death of a human being; but the Legislature did not choose to do that; it chose to confine the liability to persons (not passengers or employees) who were "in the exercise of due care and diligence," to quote the words of the original act of St. 1853, c. 414, § 1, and who are "in the exercise of due diligence," to quote the words of the act now immediately in question, St. 1886, c. 140, and the words of the fourth count of the declaration in the case at bar.

If it be a fact that a person in such a stupor as Pope was in can be said to be by legal intendment negatively and constructively in the exercise of due care, within the meaning of those words when used in a declaration to recover compensation for an injury done to the plaintiff, which we do not concede, we are of opinion that he cannot be held to be in the " exercise of due diligence " within the meaning of those words in St. 1886, c. 140.

It is settled that these words in that statute mean what they have meant and still mean in an indictment under St. 1853, c. 414, § 1, now R. L. c. 111, § 267; and that they are not to be construed as invoking for the test of the defendant's liability under the statute its liability at common law in case of an action for compensation for an injury short of death. Construing these words in the light of what we have shown to be settled by decision, they cannot be held to mean what for the purposes of this discussion we assume without deciding that similar words mean by legal intendment in an action for compensation, but must be taken to have here their ordinary acceptation, and to mean that the person killed, if not a passenger or employee, must have been actively and actually in the exercise of due diligence.

In the opinion of a majority of the court the entry must be, in accordance with the terms of the report,

*Judgment for the defendant on the fourth and sixth counts.*