WILLIAM J. BOTHWELL, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 17, 1913. — September 12, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Due care of frightened person, Street railway, Causing death. *Evidence,* Presumptions and burden of proof, Contradictory statement by witness at preceding hearing. *Practice, Civil,* Ordering judgment under St. 1909, c. 236. *Constitutional Law,* Right to trial by jury. *Jury and Jurors. Supreme Judicial Court. Words,* "Due care."

Where, at a trial in the Superior Court, the defendant offers in evidence, for the sole purpose of contradicting a certain statement made by a witness for the

plaintiff, a statement to the contrary previously made by the witness when testifying at an inquest, and at the demand of the plaintiff the entire testimony of the witness at the inquest is introduced in evidence, the plaintiff cannot rely on a sentence therein, which does not relate to the subject matter of the testimony in the Superior Court which the defendant is seeking to contradict, to prove affirmatively the facts that were testified to in such sentence.

Evidence tending to show that, while a boy was engaged with others in annoying a Chinaman who was lawfully at work upon his own premises, he became frightened by the conduct of the Chinaman and ran into a street in front of a street railway car by which he was run over and killed, is not evidence of the due care which by St. 1907, c. 392, is made a prerequisite to a recovery against the street railway company for such a death.

In order to recover, in an action under St. 1907, c. 392, against a street railway company for the death of a person, not a passenger, it is necessary for the plaintiff to prove that the decedent was giving reasonably intelligent and energetic attention to his own safety when he was injured, and it is not enough to show a negative and passive freedom from fault on his part.

The provision of St. 1909, c. 236, § 1, that, in a case before this court on an exception by a defendant to a refusal of a presiding judge to order a verdict for such defendant, this court, if the defendant's exception is sustained, may by rescript direct the entry in the trial court of judgment for the defendant, does not violate the right to a trial by jury which is guaranteed by art. 15 of the Declaration of Rights.

Tort under St. 1907, c. 392, for the death of William J. Bothwell, caused by his being run into by a car of the defendant on Washington Street in that part of Boston called Roslindale, and alleged to have been due to negligence of the motorman of the car. Writ dated August 21, 1908.

In the Superior Court the case was tried before *Lawton,* J.

The bill of exceptions stated that at the trial the defendant read a "statement of the plaintiff's witness Dixon given at the inquest in October, 1908, in which the witness Dixon said in substance that he ran up the street, and said nothing about seeing any other car, nor about Willie's [the plaintiff's] stepping back after having once crossed the track. The plaintiff demanded that the whole statement be read and in the course of it the statement said that the other boys were teasing the Chinaman but Willie was not teasing him. The statement was offered by the defendant solely to contradict the witness Dixon in his statement at the trial that he saw another car and that he, Dixon, ran across the street."

Other material facts are stated in the opinion. The jury found for the plaintiff in the sum of $5,000; and the defendant alleged exceptions.

*F. Ranney,* (*T. Allen, Jr.,* with him,) for the defendant.

*D. H. Coakley,* for the plaintiff.

RUGG, C. J.  The plaintiff seeks damages for the death of his intestate under St. 1907, c. 392, which authorizes recovery from a street railway company, whose servants in the conduct of its business negligently cause the death of a person, not a passenger or an employee, "in the exercise of due care." The uncontradicted evidence shows that the plaintiff's intestate at the time of the accident was nine years and nine months old. With other boys he was standing on a sidewalk looking at a Chinaman who was fixing something on the floor of a shop with a hatchet. The boys were "teasing" or "mocking" the Chinaman, who, after a few minutes, "got up with the hatchet in the air and walked toward the door." Thereupon the boys, some of them in fright, scattered in different directions, the plaintiff's intestate running into the street in front of a car of the defendant and being fatally injured. The only fair inference from the evidence is that the plaintiff's intestate was engaged with the other boys in vexing the Chinaman. The testimony of one of his companions was that — "McLeod and Miele were with him. They were looking at the Chinaman teasing him. . . . The boys teased the Chinaman," while that of another was, — "We were mocking the Chinaman." There was nothing to impair the force of this testimony The contrary sentence in the statement of one of the plaintiff's witnesses at the inquest, offered solely to contradict his testimony at the trial in the Superior Court in a different respect, was not affirmative evidence of the fact. The point to be decided is, whether a finding was warranted that the plaintiff's intestate was "in the exercise of due care" as required by the statute as a condition of recovery. It is not contended that there is any evidence of active exercise of care by the deceased. But the plaintiff's position is that his intestate was relieved from such exercise of care by reason of the fear into which he was thrown by the conduct of the Chinaman.

Much may be excused in a person under the impulse of fear induced by circumstances over which he has no control and for which he is not responsible. Conduct which unhesitatingly would be pronounced wanting in care in a person under normal conditions may be found prudent in one overwhelmed by fright or confronted with the necessity of instant action in imminent peril. Where

the fear has been caused by the defendant there is even more reason for judging with leniency the conduct of the person who suffers harm under such circumstances. But in order that this doctrine may be invoked, the injured person himself must be free from blameworthy participation in the event which has caused the fright. Wrongful conduct cannot be treated as an excuse for being in a position of danger. *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448, 450. *Rundgren* v. *Boston & Northern Street Railway,* 201 Mass. 156, 158. The plaintiff's intestate was engaged with his companions in the wrongful project of "teasing" and "mocking" a Chinaman at work on his own premises. It might reasonably have been anticipated that in some way he would attempt to be rid of his tormentors. But whatever may be said of his conduct in trying to scare the boys away, or of relative rights between him and the boys, it is nevertheless true that the acts in which the plaintiff's intestate joined were wholly without justification and were wrong. It was not an unnatural result of these acts that he should be momentarily put in fear by the victim of his hectoring.

But whether there could be recovery if the intestate had survived and brought an action in his own name, it is plain that the present action cannot be maintained. If, while thus suffering from fright, fatal injuries are sustained by reason of impact with a street railway car, it cannot be said that the injured person was "actively and actually" in the exercise of the diligence which has been held to be necessary in order that there may be recovery under this statute. It has been settled after elaborate consideration that the words "due care" in this statute mean something more than a negative and passive freedom from fault and require reasonably intelligent and energetic attention to safety, and stand on the same basis as if they were used in an indictment under the same statute. They are not satisfied by "invoking for the test of the defendant's liability under the statute its liability at common law in case of an action for compensation for an injury short of death." *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, 521. It follows that the defendant's request should have been granted to the effect that a verdict be directed in its favor.

It is urged by the defendant that this is a proper case for this court to exercise the power vested in it by St. 1909, c. 236, and

to direct by its rescript that judgment be entered for the defendant. The case appears to have been fully and fairly tried with an intelligent appreciation by counsel on each side of the issues involved and of the principles of law applicable to it, and its merits on the ample report of the evidence contained in the exceptions seem plain. Therefore it appears to be a case where the statute properly may be invoked. *Archer* v. *Eldredge,* 204 Mass. 323, 327. *Grebenstein* v. *Stone & Webster Engineering Corp.* 205 Mass. 431, 440. *Newhall* v. *Enterprise Mining Co.* 205 Mass. 585. *Burke* v. *Hodge,* 211 Mass. 156, 163.

This course would be followed without discussion but for the decision of *Slocum* v. *New York Life Ins. Co.* 228 U. S. 364, which holds that "the right of trial by jury" secured by art. 7 of the Amendments to the Constitution of the United States does not permit the entry, after a verdict in favor of one party, of a judgment for the opposing party under circumstances like those in the case at bar. The question there arose in reviewing the action of the Circuit Court of Appeals which, under the conformity act (U. S. Rev. Sts. § 914) and following a Pennsylvania statute, had entered judgment in favor of the party for whom the trial court erroneously refused to direct a verdict. The substance of that decision is that it is an unconstitutional exercise of the power of legislation to authorize the entry of judgment in a case where a trial by jury has been had, except in conformity to the verdict, and that, although the error committed by the trial court may consist solely in its refusal to direct a verdict in favor of one party, yet after a verdict wrongly rendered in favor of the adverse party as the direct result of such erroneous refusal, the only method for correcting that error within the reach of the legislative or judicial departments of government is to order a new trial, and this because of the scope of the meaning of "trial by jury," as secured by the Seventh Amendment to the Federal Constitution. That decision is not a final or binding authority on this court, for the reason that the Seventh Amendment does not control the action of the several States in abridging trial by jury within their own jurisdiction. It applies only to the courts and Congress of the United States. *Pearson* v. *Yewdall,* 95 U. S. 294, 296. *Twining* v. *New Jersey,* 211 U. S. 78, 98. The decision of *Slocum* v. *New York Life Ins. Co.* was rendered by a bare majority of a divided

court, four of the justices, among whom is a former chief justice of this court, joining in a dissenting opinion. But the deference due to a decision by the highest court of the nation when it challenges the constitutionality of our statute (as it does because our own constitution secures the right of trial by jury) renders necessary thorough consideration, even though our statute has been acted upon heretofore in numerous instances without question of its validity.

The substance of our statute is that in civil cases where at the trial a request has been made that on all the evidence a finding or verdict be returned for either party, and such request has been denied and a finding or verdict has been rendered contrary thereto, and it shall be held by this court on exceptions that such request should have been granted, then (if all exceptions by the prevailing party shall be overruled) this court may by rescript direct the entry in the trial court of judgment for the party in whose behalf the request for the finding or verdict was made and erroneously refused. Before the statute of 1909 no such power resided in any of our courts. The practice is stated with clearness in *Smith* v. *Lincoln,* 198 Mass. 388, where it was held that after a verdict the only power of the trial judge was to set aside the verdict. The aim of the act is plain both from its provisions and its title, "To provide for expediting the final determination of causes." However laudable the design for preventing delays in the administration of justice, it can be exercised only in accordance with the limitations imposed by the constitution. Article 15 of the Declaration of Rights of our Constitution provides: "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the Legislature shall hereafter find it necessary to alter it." This article has been discussed in numerous cases. It has been held that the Legislature may regulate the mode in which the right shall be exercised and that such regulation does not impair the substance of the right. This rule has been applied to statutes requiring as a condition precedent to the trial an affidavit of defense, *Hunt* v. *Lucas,* 99 Mass. 404; the filing of a claim for

a trial by jury in order to prevent waiver of the right, *Foster* v. *Morse*, 132 Mass. 354; appeal from decision of tribunal without a jury, *Kenney's case*, 108 Mass. 492; the giving of bail and security for costs on appeal from trial before a magistrate, *Jones* v. *Robbins*, 8 Gray, 329, 341, *Hapgood* v. *Doherty*, 8 Gray, 373; and to statutes changing the rule as to challenges of jurors, *Commonwealth* v. *Dorsey*, 103 Mass. 412; the qualifications of jurors, *Commonwealth* v. *Wong Chung*, 186 Mass. 231, *Commonwealth* v. *Worcester*, 3 Pick. 462, and the weight to be given to evidence, *Holmes* v. *Hunt*, 122 Mass. 505, 516; and restricting the right of the trial judge to set aside a verdict to cases where motion therefor is made and to reasons stated, *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223, 229, *Loveland* v. *Rand*, 200 Mass. 142, *James* v. *Boston Elevated Railway*, 213 Mass. 424. See *Commonwealth* v. *Barry*, 9 Allen, 276.

On the other hand it has been said that trial by jury implies power of the judge to set aside a verdict and grant a new trial, which cannot be impaired by the Legislature. *Opinion of the Justices*, 207 Mass. 606. *Capital Traction Co.* v. *Hof*, 174 U. S. 1.

None of these cases are decisive of the point now presented. It becomes necessary to consider the nature of the trial by jury secured by our Constitution. There was great diversity in the form of jury trial existing in the several States at the time of the adoption of the Constitution of the United States. This is discussed with fecundity of illustration by Hamilton in No. 83 of the Federalist. Plurality of jury trials in Massachusetts in the same case there is referred to. Indeed, this variety of custom between the States has been said to have been the reason why no article securing trial by jury in civil cases was inserted in the Constitution by the convention which framed it. 5 Elliot's Debates, 550.

The trial by jury preserved by our Constitution is the common law trial by jury in its essential characteristics as known and understood at the time the Constitution was adopted. *Commonwealth* v. *Anthes*, 5 Gray, 185, 229. It did not mean to preserve the minor details or unessential formalities of the trial by jury as it then existed either in England or here. That is plain both on reason and authority. Trial by jury in some form had existed since the early settlement of this State. Modifications of the system as practised in the mother country had grown up by custom and by legislation in the Colony and Province of Massachusetts

Bay. It is not to be thought that the framers of our Constitution in 1780, performing their labors in the midst of the War of the Revolution, had in mind the system of the mother country rather than that with which they were familiar by daily observation. As we understand, the substance of trial by jury in England and in Massachusetts was the same although there were differences of detail. *Parker* v. *Simpson,* 180 Mass. 334, 355. If, however, essential differences existed, it seems to us not open to debate that the trial by jury known and practised in this State at the time the Constitution was framed and adopted was the one meant by art. 15 of our Declaration of Rights. It was pointed out with ample reference to the statutes by Mr. Justice Story in *United States* v. *Wonson,* 1 Gall. 5, that both in the colonial and provincial periods of the history of our Commonwealth two trials by jury upon the same issues in the same case often were permissible as of right, one in the court of first instance and one in the appellate court. This continued to be the law until after the ratification of the Federal Constitution. St. 1782, c. 11, §§ 2, 5; c. 14, § 3. St. 1784, c. 28, § 8. It has never been suggested, so far as we are aware, that this double jury trial was one of the incidents of the constitutional right of our citizens. Under our practice trial by jury in its constitutional sense does not include all the features which attach to the right in England. This is pointed out in *Simmons* v. *Fish,* 210 Mass. 563, 569, where one difference touching the scope of a new trial is discussed. Our cases there are reviewed at length and it is shown that a new trial in this State (contrary to the established law of England) has been construed not to require a new trial of all the issues raised by the pleadings when in law and in the exercise of sound sense it appears that the issue as to which alone error was committed in the trial is wholly separable from those as to which a full and fair trial in law was had and may with entire justice and a jealous regard to the rights of all parties, both in their strictly legal aspects and in the practical phases likely to arise in a jury trial, be submitted as a separate and distinct matter to be determined by a new jury. This power is exercised with caution. But its existence does not impair in any of its essential features the right of trial by jury which the Constitution commands to be held sacred. See *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 392; 25 Ann. Cas. 588, and cases collected.

It was a part of common law trial by jury that the plaintiff might become nonsuited as of right at any time before verdict if not before judgment. *Derick* v. *Taylor,* 171 Mass. 444, and cases there collected. 2 Tidd's Pract. 867. *Haskell* v. *Whitney,* 12 Mass. 47, and cases cited in note at p. 49. But as early as 1820 it was decided that in this Commonwealth apparently as a practice long existing a plaintiff had no such right after the case was opened to the jury. *Locke* v. *Wood,* 16 Mass. 317. See *Carpenter & Sons Co.* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 98. It is pointed out both in the opinion and in the dissent in *Slocum* v. *New York Life Ins. Co.* 228 U. S. 364, that there is no novelty in a judgment being given at common law without a verdict by a jury for that was accomplished by a demurrer to evidence. *Copeland* v. *New England Ins. Co.* 22 Pick. 135. It is stated that our statutes make simpler provision for reaching the result available by that common law method. *Golden* v. *Knowles,* 120 Mass. 336. There are other similar instances. It is laid down in 2 Tidd's Pract. 900 (a work of undoubted authority as to common law) as a principle of jury practice at common law that "It sometimes happens that a point is reserved, or saved by the judge at *nisi prius,* with liberty to apply to the court for a nonsuit or verdict; in which case, the court has been in the habit of considering itself in the situation of the judge, at the time of the objection raised; and a nonsuit or verdict is entered according to their determination, without subjecting the parties to the delay and expense of a new trial." Numerous cases there are cited where such practice has been adopted, the following being the most pertinent: *Cox* v. *Kitchin,* 1 B. & P. 338; *Attwood* v. *Small,* 1 Man. & Ry. 246, 261 (a); *Mead* v. *Robinson,* Barnes's Notes, 451; *Kemp* v. *The Hundred of Strafford,* Barnes's Notes, 455. Judgment appears not infrequently to have been entered by order of the appellate court upon special case stated. See for example *Wright* v. *Cartwright,* 1 Burr. 282; *Atkin* v. *Barwick,* 1 Strange, 165; *Coppendale* v. *Bridgen,* 2 Burr. 814. This practice seems to have been followed in New York in some instances, *Holmes* v. *D'Camp,* 1 Johns. 34; *Hatten* v. *Speyer,* 1 Johns. 37; and perhaps rested in many instances on consent. 2 Tidd's Pract. 898. This is akin to our practice on a case stated. *Massachusetts National Bank* v. *Bullock,* 120 Mass. 86.

A somewhat analogous practice is described at length in *Treacher* v. *Hinton*, 4 B. & Ald. 413, 416, 417, in the compulsory nonsuit by the judge, giving the plaintiff liberty to move for a verdict in his favor, which, if subsequently ruled to have been required by law, then might be entered to be as effective as if pronounced by the jury. This case, decided in 1821, states apparently a well understood and ancient common law practice, no doubt in existence at the time of the adoption of our Constitution. Illustrations of this practice are to be found in *Hobbs* v. *London & Southwestern Railway*, L. R. 10 Q. B. 111, 113, 125; *Reed* v. *Kilburn Cooperative Society*, L. R. 10 Q. B. 264. See 26 Harv. Law Rev. 732. It has not been commonly supposed that in England any impairment of the vitals of trial by jury has been wrought by modern statutes. See 8 Am. Law Rev. 256, 274. Yet a practice similar to that prescribed by our statute exists there. *McGuire* v. *Western Morning News Co.* [1903] 2 K. B. 100, 113.

In view of all these considerations we are of opinion that St. 1909, c. 236, is not a violation of the right to a trial by jury secured by our Constitution. The falling into disuse of the two trials, which existed in many instances as of right in this Commonwealth at the adoption of the Constitution, within half a century thereafter, is evidence to this conclusion. This is confirmed by the early denial to the plaintiff of the right to become nonsuited after the evidence was in. It is supported by the common law practice to which reference has been made.

The essence of trial by jury is that controverted facts shall be decided by a jury. The constitutional right to trial by jury is preserved in this regard when each party has one fair opportunity to present to a jury the evidence on which he claims to raise an issue of fact. If he fails utterly to improve that opportunity, there is no constitutional guaranty that he shall be given another chance. He has had his day in court. One feature of ideal administration of justice by the jury system is that correct rulings of law shall be made by the presiding judge. If the record is so framed and preserved that the same result may be reached at a later time as would have been attained by such correct rulings at the trial that end is attained by constitutional means. The function of the jury is to pass upon the facts involved in an action. The statute now under review does not infringe upon this

province in any degree. A trial judge always has had power to direct a verdict provided the law required it. The statute simply permits that to be done by this court which ought to have been done at the trial. The hypothesis by which alone it permits the order to be made is that at the trial no question of fact was in truth presented, but only one of law which the court should have ruled as such. It does not disturb the plain boundary between fact which a jury must determine and law which the court must rule. It permits the right ruling to be given at a time later than that at which it should have been made when no substantial rights have accrued in the meantime.

We are of opinion that the history of our practice as to trial by jury both before and since the adoption of the Constitution shows that the trial by jury of our Constitution has slightly more flexibility in its adaptation of details to the changing needs of society without in any degree impairing its essential character than is ruled by the majority of the court in *Slocum* v. *New York Life Ins. Co.* We are constrained not to adopt the reasoning or the conclusion of that opinion as correctly defining the scope of legislative power under our Constitution. St. 1909, c. 236, is not in violation of our Constitution. This result is in harmony with the decisions of many other courts.* We do not rest this judgment upon their authority, however, for we have not undertaken the historical study of the several constitutional provisions under which they have arisen to determine their weight.

The defendant's exceptions are sustained, and in accordance with St. 1909, c. 236, judgment is to be entered in the Superior Court for the defendant and rescript is to go to that effect.

*So ordered.*

---

* *Anderson* v. *Fred Johnson Co.* 116 Minn. 56. *Muench* v. *Heinemann,* 119 Wis. 441, 448. *Hay* v. *Baraboo,* 127 Wis. 1. *Cornette* v. *Baltimore & Ohio Railroad,* 115 C. C. A. 61. *Bailey* v. *Willoughby,* 33 Okla.194. *McVeety* v. *Harvey Mercantile Co.* 139 N. W. Rep. 586. *Fishburne* v. *Robinson,* 49 Wash. 271. *Roe* v. *Standard Furniture Co.* 41 Wash. 546. *Cruikshank* v. *St. Paul Fire & Marine Ins. Co.* 75 Minn. 266. *Dalmas* v. *Kemble,* 215 Penn. St. 410. *American Car & Foundry Co.* v. *Alexandria Water Co.* 221 Penn. St. 529. *Manning* v. *Orleans,* 42 Neb. 712. *Smith* v. *Jones,* 104 C. C. A. 329. *Fries-Breslin Co.* v. *Bergen,* 99 C. C. A. 384. *Carstairs* v. *American Bonding & Trust Co.* 54 C. C. A. 85. *Richmire* v. *Andrews & Gale Elevator Co.* 11 No. Dak. 453.