MARY BARRETT *vs.* CHECKER TAXI COMPANY.

Suffolk.    January 19, 20, 1928. — April 3, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Negligence*, Contributory, In use of highway, Motor vehicle. *Practice, Civil*, Conduct of trial: requests, rulings and instructions. *Evidence*, Competency, Real.

At the trial of an action of tort for personal injuries received by a woman when she was struck at night by a taxicab operated by an employee of the defendant, there was evidence that the plaintiff, when about to cross a street divided by grass reservations into three parts, looked in both directions as she left the sidewalk and saw no automobiles; that as she stepped upon the curb of the first grass reservation there were no automobiles in the street; that she then crossed that reservation and, after looking again before leaving it and seeing no automobiles, she was struck by the taxicab when eight to ten feet into the street; and that she heard no horn and saw no lights from vehicles approaching her. The operator of the taxicab testified that he saw the plaintiff seventy-five feet away standing in the gutter of the grass plot but did not blow his horn; and that he could stop in from ten to fifteen feet at a speed of twenty to twenty-five miles an hour.    A police officer testified that he heard a loud screeching of brakes and found wheel marks in the street at the place of the accident fifty-five feet in length.    *Held*, that

(1) The plaintiff, whether or not she saw the taxicab when she started to cross the travelled way upon which it was approaching, had a right to rely to some extent on the expectation that its driver would observe the requirements of G. L. c. 90, §§ 14, 17;

(2) The plaintiff might have been found to have been in the exercise of due care even though she did not see the approaching automobile when she looked;

(3) The question whether negligence of the plaintiff contributed to the injury, was for the jury;

(4) There was evidence that the driver of the taxicab was negligent.
There was no error, at the trial of the action above described, in admitting in evidence a coat of the plaintiff which was identified by a witness as being in substantially the same condition at the time of the trial as it was on a day, nearly four months after the accident, when the plaintiff left a hospital to which she had been taken.
A judge who has accurately charged the jury is not required to give rulings upon parts of the evidence or upon different assumed findings of fact.

TORT for personal injuries.    Writ dated October 17, 1924.
In the Superior Court, the action was tried before *Ray-*

*mond*, J.   With regard to the coat referred to in the opinion, a witness called by the plaintiff testified that she was with the plaintiff when the plaintiff left the hospital (nearly four months after the accident), and that, apart from the absence of a light colored collar and cuffs on it, the coat was in the same condition at the time of the trial as it was at the time the plaintiff left the hospital.   Other material evidence is stated in the opinion.   The judge denied a motion by the defendant that a verdict be ordered in its favor, and there was a verdict for the plaintiff in the sum of $18,190.   The defendant alleged exceptions.

*T. H. Mahony*, for the defendant.

*M. C. Kelleher*, (*W. Flaherty* with him,) for the plaintiff.

SANDERSON, J.   This is an action of tort to recover for injuries received by the plaintiff when walking across Commonwealth Avenue at night.   She was struck by a taxicab of the defendant, operated by one of its employees while on the defendant's business.   A verdict was returned for the plaintiff.

Commonwealth Avenue, at the place of the accident, has three ways for vehicular traffic separated by grass reservations, in one of which street railway tracks are located.   As the plaintiff started from the sidewalk to cross the first travelled way, she looked in both directions and no automobiles were approaching.   As she stepped upon the curb of the grass plot no automobiles were coming into Commonwealth Avenue from any street across either grass reservation.   Before she left the grass plot, she looked again and saw no vehicles approaching from either direction, and she testified there were none there or she would have seen them.   She walked three or four steps on her way across the center driveway and when about eight or possibly ten feet from the grass plot she was struck by the defendant's automobile.   She had not heard the sound of a horn or any other sound, and had observed no lights from vehicles coming toward her.   She did not know that an automobile was coming until she was struck.   The street was well lighted and she could see to her left — the direction from which the taxicab came — several hundred feet.

There was testimony from the operator of the automobile tending to show that he saw the plaintiff cross over and stand at the edge of the reservation; that her back was turned toward him and she was looking in the opposite direction; that when he first saw her she was probably seventy-five feet away standing in the gutter of the reservation; that there was nothing to indicate that she intended to cross, and he continued on his way without noticing her again; that he did not blow his horn and after he saw her he kept on going and the first he knew she was right in front of his mud guard; that he threw his car over to the left and the right front wheel struck her catching her coat and throwing her in. the air. The jury could have found that the automobile did not change its course before striking the plaintiff. An officer on duty testified that he heard the loud screeching of brakes being jammed on quickly and saw the taxi coming to a stop; that the marks where the wheels had been dragged were fifty to fifty-five feet in length and indicated the application of the brakes. The chauffeur testified that he could stop in from ten to fifteen feet if going at the rate of twenty to twenty-five miles an hour.

A pedestrian, whether he sees an automobile or not, has a right to rely to some extent on the expectation that any motor vehicle, approaching him, will slow down and give a timely signal and observe the other requirements of G. L. c. 90, §§ 14, 17. The plaintiff might be found to be in the exercise of due care even though she did not see the approaching automobile when she looked. *French* v. *Mooar*, 226 Mass. 173. *Kaminski* v. *Fournier*, 235 Mass. 51. *Davicki* v. *Flanagan*, 250 Mass. 379. It was for the jury to say how far away the automobile was when the plaintiff said she looked, and whether negligent conduct on her part in looking or in any other matter was a contributing cause of the accident. The mark observed in the street caused by the defendant's automobile and the effect of the contact of the automobile with the plaintiff had some tendency to show its speed, and the jury could have inferred that in its operation the chauffeur was negligent. His failure to sound the horn or to pay any attention to the plaintiff after he saw her at the

edge of the reservation also could have been found to be negligent conduct.

No error appears in the ruling which permitted the plaintiff to show the jury the coat she was wearing when injured. The standard of care which the law required of the plaintiff and the standard by which the question of the negligence of the defendant was to be determined were accurately stated to the jury by the judge in his charge. He was not bound to rule upon parts of the evidence or upon different assumed findings of fact; *Buckley* v. *Frankel,* 262 Mass. 13, 15, and cases cited; nor to instruct the jury that the plaintiff could not recover if she did not look toward the taxicab or if she looked and did not see it. In our opinion the controlling legal propositions to guide the jury were stated and there was no reversible error in the refusal to give the instructions requested.

*Exceptions overruled.*