## BOSTON ELEVATED RY. v. GREANEY.
### No. 2817.

Circuit Court of Appeals, First Circuit.
Jan. 29, 1934.

John T. Hughes, of Boston, Mass. (Herbert L. Barrett, of Boston, Mass., on the brief), for appellant.

Leo P. Doherty, of Boston, Mass. (James T. Doherty, of Boston, Mass., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

LETTS, District Judge.

This is an action in tort for personal injuries sustained by the plaintiff through the alleged negligence of the defendant.

The answer of the defendant denies the allegations of negligence on its part and alleges that the plaintiff was not on her part in the exercise of due care. There was a verdict

for the plaintiff. The only issue presented is that raised by the trial court's denial of defendant's motion for a directed verdict. We have then two inquiries: Does the record disclose evidence which is sufficient, as a matter of law, to warrant a finding by the jury of, first, negligence on the part of the defendant, and, second, the exercise of due care on the part of the plaintiff?

The accident occurred in the early evening of January 2, 1932, at about 5:30 p. m. The plaintiff came out of the Holy Cross Cathedral on Washington street, near the corner of Malden street, in the city of Boston. She proceeded to the curb line of Washington street and there undertook to cross, not at a street intersection, but at a point nearly opposite to the entrance to the Cathedral. At this point there still remains in the central part of the street flagstones indicative of a once established crosswalk. There was evidence, too, that the route chosen by the plaintiff is customarily used by communicants of the Cathedral in going to and from services. After venturing a few steps into the street, she was struck by the right side of a bus owned and operated by the defendant.

The plaintiff testified that upon arriving at the curb line of the street she looked both ways. "I came out of church and got to the curbstone; I looked up and down and seen this bus up at the stable; I took three or four steps across the street and looked again and it was at Malden Street and then I took two or three steps and was hit."

The stable to which the plaintiff refers in her testimony was a distance of about 190 feet westerly from the plaintiff's intended point of crossing.

She further testified that she again noticed the bus at Malden street which was a distance of about 112 feet to the plaintiff's left. She did not see it again until she was struck, after having taken in all about seven steps into the street. According to the plaintiff's testimony, the bus was proceeding along Washington street about 3 feet from the curb on its right-hand side when last observed by her.

"Q. The bus was only about three feet from the curbstone? A. Yes.

"Q. You never got in front of that bus at all? A. Oh, no.

"Q. You were struck by the right-hand side, that is, the side of the bus next to you? A. Yes."

The testimony of the other witnesses, including the operator of the bus, was in sharp conflict in many details. The speed of the bus was placed by passengers thereon at from 25 to 30 miles an hour and by the bus operator at from 10 to 12 miles an hour. There was considerable conflict in regard to where the plaintiff lay in the street after being struck in relation to the point at which the bus came to a stop. All the testimony indicates that it was a rainy night with considerable wind. The operator of the bus testified that he was familiar with the roadway in front of the Cathedral; that his bus was working properly; and that his windshield wiper was working and the windshield not clouded. He was uncertain as to whether there was more than one windshield wiper on the bus. Other witnesses testified that the windows of the bus, through which they looked, were clouded and one witness testified that the windshield was divided into two parts and that there was no windshield wiper on the right front half.

The testimony of the operator of the bus differs radically from that of the plaintiff in regard to the distance that the bus was from her when she first stepped from the curb into the street.

We are not here concerned with any statement of the plaintiff's injuries nor the amount of the verdict returned, as no issue is raised in respect to this phase of the case. It is clear that the question of defendant's negligence, in the light of the conflicting evidence as to speed and distances together with the hour of occurrence, the weather, and street conditions was a question of fact for the jury.

The only troublesome question presented is whether the court should have ruled, as a matter of law, that the plaintiff was not in the exercise of due care.

When a pedestrian undertakes to cross a street at a proper point, and not in defiance of traffic regulations or signals, he has the same right on the street as a motorist. Both are bound to use reasonable precautions in respect to their own and others' safety. A pedestrian has the right to assume that one operating a vehicle will exercise ordinary care not to injure him. In most jurisdictions where a pedestrian about to cross the street sees an approaching motor car at such a distance away that he can reasonably arrive at a conclusion that he can safely cross ahead of it, he is not guilty of negligence in starting across the street under such circumstances. Courts in most jurisdictions, when dealing with a particular situation, have refrained from any declaration that a pedes-

trian who sees a motor vehicle approaching at some distance and proceeds to cross the street in front of it is chargeable with contributory negligence as a matter of law if struck and injured. Under proper instructions from the trial court giving consideration to the situation in which the pedestrian is placed at the time, the circumstances surrounding him, and the distractions which beset him, the question of contributory negligence is a question of fact to be left to the jury.

In considering the question of the rights and responsibilities of the pedestrian in a public street under the decisions of the Supreme Judicial Court of Massachusetts, it is important not to confuse the holdings of that court, in cases where the pedestrian was killed and the action instituted under the death statute, with cases where the pedestrian was injured only and the action to recover for those injuries was brought at common law. Counsel for the defendant in their brief, in support of their argument that the plaintiff must be in the exercise of reasonable active care and attention for her own safety, cite the following cases: Bothwell v. Boston Elevated R. Co., 215 Mass. 467, 102 N. E. 665, L. R. A. 1917F, 167, Ann. Cas. 1914D, 275; Welsh v. Concord, M. & H. Street Railway, 223 Mass. 184, 111 N. E. 693.

To this group might also well have been added Hudson v. Lynn & B. R. Co., 185 Mass. 510, 71 N. E. 66.

These cases all deal with the meaning and requirements of the words "exercise of due diligence" used in the Massachusetts Statute permitting a recovery for a death wrongfully caused. In the case of Hudson v. Lynn & B. R. Co., supra, at 521 of 185 Mass., 71 N. E. 66, 70, the court says:

" * * * We are of opinion that he cannot be held to be in the 'exercise of due diligence,' within the meaning of those words in St. 1886, p. 117, c. 140. It is settled that these words in that statute mean what they have meant and still mean in an indictment under St. 1853, p. 622, c. 414, § 1, now Rev. Laws, c. 111, § 267, and that they are not to be construed as invoking for the test of the defendant's liability under the statute its liability at common law in case of an action for compensation for an injury short of death."

It is because of this construction of the Massachusetts Statute, permitting recovery for wrongful death, that the court says in the case of Welsh v. Concord, M. & H. Street Railway, supra:

"In order that the plaintiff may recover, there must be some evidence to show that his intestate was in the active exercise of reasonable care and attention for her safety. Mere negative conduct, amounting only to freedom from fault, is not sufficient to warrant a recovery under the statute."

An examination also of the long line of decisions of the Massachusetts court dealing with the question of what will constitute contributory negligence as a matter of law on the part of a pedestrian who is injured by a street railway car, and seeks to recover at common law for such injuries, would indicate that this line of decisions should not be given too general application when dealing with an action for injuries caused by other types of vehicular traffic.

In this group of railway injury cases the court does not pronounce the formula or state the obligation of the pedestrian as in the decisions involving recovery for death. It has, however, judging from the results reached, been ready to deal with the question of contributory negligence as a matter of law where a pedestrian enters a zone of known danger in crossing the fixed path of a street car which is under less elastic control than other types of vehicles.

We prefer to rest our decision upon the authority of the numerous cases dealing with the question of the rights and duties of a pedestrian in relation to the various types of ambulatory vehicles.

As early as 1914 the Massachusetts court in the case of Griffin v. Taxi Service Co., 217 Mass. 293, 104 N. E. 838, in dealing with a case involving a taxicab and a pedestrian, in a per curiam decision, said:

"The evidence is irreconcilably conflicting, and from the record the defendant well might have expected a verdict in its favor. But it might have been found that at a place of great congestion of traffic the plaintiff, seeing an approaching taxicab of the defendant 20 to 25 feet away, under circumstances which led him to form a judgment that there was ample time to pass in front of it, started to cross from one side of a city street to the other and was struck and injured. Whether the plaintiff was justified in his conduct and whether the servant of the defendant was negligent were questions for the jury. Gray v. Batchelder, 208 Mass. 441, 94 N. E. 702; Rasmussen v. Whipple, 211 Mass. 546, 98 N. E. 592; Huggon v. Whipple & Co., 214 Mass. 64, 100 N. E. 1087."

In another similar case, that of Barrett v. Checker Taxi Co. (1928) 263 Mass. 252, 254, 160 N. E. 792, 793, the same court said:

"A pedestrian, whether he sees an automobile or not, has a right to rely to some extent on the expectation that any motor vehicle, approaching him, will slow down and give a timely signal and observe the other requirements of G. L. c. 90, §§ 14, 17. The plaintiff might be found to be in the exercise of due care even though she did not see the approaching automobile when she looked. French v. Mooar, 226 Mass. 173, 115 N. E. 235; Kaminski v. Fournier, 235 Mass. 51, 126 N. E. 279; Davicki v. Flanagan, 250 Mass. 379, 145 N. E. 449. It was for the jury to say how far away the automobile was when the plaintiff said she looked, and whether negligent conduct on her part in looking or in any other matter was a contributing cause of the accident."

The following recent cases, all of which cite with approval the Barrett Case, supra, enunciate substantially the same rule of law: Martin v. Florin (1930) 273 Mass. 13, 172 N. E. 895; McGuiggan v. Atkinson (1932) 278 Mass. 264, 179 N. E. 627; Legg v. Bloom (Mass. 1933) 184 N. E. 832.

In the case at bar the trial court correctly ruled that the question of the plaintiff's contributory negligence was a question of fact to be determined by the jury.

The judgment of the District Court is affirmed with interest and with costs to the appellee.